APRIL TERM, 1852.

M. W. BLAND et ux. *vs.* C. W. MUNCASTER.

The statute which requires executors and administrators of estates of decedents
to give "at least thirty days' notice," &c., after obtaining the order of sale, does
not render such sale void by failure to give the requisite notice.   *Minor* v.
*Selectmen of Natchez,* 4 S. & M. 619, cited and confirmed.

An order of the probate court, confirming a sale made by an executor or an
administrator, must be treated as final and conclusive, until reversed, unless
the same is revoked for fraud or other matter which renders it void.

Whilst a legatee or a distributee can avoid the sale of property, it does not fol-
low that the creditors can do so.

The purchase by Mrs. S. of the slaves in controversy was not void, but only
voidable, and must be treated as a valid sale, until the order of confirmation
shall, in a proper manner, be vacated, which cannot be done in a collateral pro-
ceeding in the circuit court, except for fraud in procuring the order.

The sale could only be set aside at the suit of a creditor, upon his showing that
it was not fairly made, and that, without a re-sale, the estate would be insuffi-

Bland et ux. *v.* Muncaster.

cient to pay the debts existing against it; but if the proceeds of the sale are sufficient to pay the debts of the estate, creditors have no right to question its validity.

In error from the circuit court of Claiborne county; Hon. Stanhope Posey, judge.

The record shows that M. W. Muncaster recovered a judgment in the circuit court of Claiborne county on the 29th of November, 1841, for the sum of $1,901.30 against P. Hoopes, S. Douglass, and Emeline Douglass, executors of James S. Douglass. An *alias fi. fa.* was issued March 19th, 1846, and on the same day delivered to the sheriff, who, on the 23d of that month, levied on the negroes in controversy, who were claimed by Bland and wife, and issue made up to try the right of property. On the trial at the October term, 1847, it was admitted that the negroes belonged to James S. Douglass at the time of his death, and the value was admitted.

On the 25th of February, 1840, an order of the probate court was made, receiving the resignation of Mrs. Emeline Douglass, as executrix; but there is nothing showing that any notice of such resignation was given, or any settlement of accounts. On the same day an order of the court was made, authorizing the executors of James S. Douglass to sell his personal property, which they did on the 20th of March, 1840, when Mrs. Douglass became the purchaser, and the report of sale was confirmed at March term, 1840, of the probate court of Claiborne county.

*J. B. Coleman,* for plaintiff in error.

*George Yerger,* on the same side.

*H. T. Ellett,* for defendant in error.

Mr. Justice FISHER delivered the opinion of the court.

This was an issue in the circuit court of Claiborne county between M. W. Bland and wife, as claimants, and C. W. Muncaster, plaintiff, in execution, to try the right of property to certain slaves levied on by the sheriff of said county, by virtue of an execution emanating upon a judgment rendered in said

court on the 29th of November, 1841, for $1,901.30, against Passmore Hoopes and Stephen Douglass, as executors, and Emeline Douglass, as executrix of the last will and testament of James S. Douglass, deceased. The execution appears to have issued on the 19th of February, 1846, and was a few days thereafter levied upon eight slaves as the property of the testator, which were claimed by the plaintiffs in error as the property of Mrs. Bland.

It appears from the bill of exceptions, that on the 25th of February, 1840, the executors obtained an order from the probate court of said county, authorizing them to sell all the personal estate of the testator. That by virtue of this order, the executors Hoopes and Douglass, on the 20th of March, 1840, made a sale of said estate, when Mrs. Douglass, now Mrs. Bland, became the purchaser thereof, at the sum of $33,240.50. An account of the sale was made to the March term, 1840, of the probate court of said county, and in all things confirmed.

It also appears by the proof in the record, that Mrs. Douglass resigned her letters testamentary on the day the order of sale was granted; but there is nothing in the record showing that she had previously given the notice of her intention to resign, as required by the statute.

This state of facts presents two questions for our consideration. First, whether the failure to give thirty days' notice of the time and place of the sale rendered it void; and second, whether the purchase by Mrs. Bland was void or voidable, admitting the order of the court, showing her resignation to be invalid?

As to the first question, it would, perhaps, be sufficient to state, that the order of the probate court, confirming the sale, must be treated as final and conclusive, until reversed, unless the same be vacated for fraud or other matter, which would render it void. Our investigation of this part of the case will first be directed to the return of the sale and the record of the court confirming it. The fact clearly appears, from the record of the probate court, that the sale was made in less than thirty days after the order of the court was obtained by the executors. The question, therefore, presents itself, whether the sale was

void, or merely voidable. If void, then, no doubt can be entertained as to the correctness of the verdict and judgment in the court below. If merely voidable, however, then very different questions arise for investigation. We will therefore proceed to examine the first branch of the question, whether the sale was void.

It is insisted by the learned counsel for the plaintiff in execution, that the executors, in making the sale, merely executed a power conferred upon them by the order of the probate court, and that the time for the execution of the power did not arise till the expiration of thirty days from the order authorizing the sale. It is not necessary that we should decide this point, or notice it, otherwise than as it connects itself with a fair construction of the statute on this subject. " It is a general rule of law and equity that an executor or an administrator has an absolute power of disposal over the whole personal effects of the testator or intestate," " the executor or administrator having the same property in the personal effects of the deceased, as he had when living." Lomax on Executors, &c. 344. From this authority, it will be seen that our statute, to some extent, conflicts with the common law; and for this reason must receive a strict construction. It cannot, however, be contended that it does any thing more than restrict the executor or administrator in the exercise of a power which he possessed without restriction by the common law.

The policy of our law is, to give to the distributee the specific property left by the deceased. To protect the rights of this class of persons, the restrictions were imposed by the statute on the powers of executors and administrators in selling estates under their charge. The propriety or necessity of a sale must be submitted to the probate court, whose province it is to determine the questions presented by the executor or administrator. As a general rule, a sale is made for the purpose of converting the property into money, to pay the debts of the deceased. And here we will remark, that it is proper to keep in view the distinction between the rights of the creditors of an estate, and those interested in the distribution of the property, which the former can only ask to have converted into money, for the purpose of satisfying their demands.

Bland et ux. *v*. Muncaster.

The section of the statute bearing on this question is in these words: "It shall be the duty of the executor or administrator to apply to the orphans' court of the proper county, for an, order of sale; and upon obtaining the same, to advertise the time and place of such sale," &c., "at least thirty days," &c. Hutch. Code, p. 669, 670. The section further provides, that when it shall be necessary to sell the whole or any part of the estate, the application shall be made as above quoted. Here the question may be asked, when is it necessary for the executor or administrator to sell the whole or part of the estate? The answer is, when the demands of creditors shall require it. The court, therefore, in ordering a sale, to some extent, pronounces a judgment in favor of the creditors, and against those interested in the distribution. It would, therefore, seem that creditors who are benefited by the judgment, should not complain of it, but only those against whom it may operate prejudicially. But no question is raised as to sufficiency of the order of the court, but only as to the action of the executors under it. Our remarks, however, will be found to apply as well to the execution of the order, as to the order itself; because, if made for the benefit of creditors, it must also be executed for their benefit. And this brings us to the important question, to wit, the failure to give the thirty days' notice of the time and place of the sale. The statute already quoted says, that it shall be the duty of the executor or administrator to obtain the order of the orphans' court, and to give thirty days' notice of the sale, &c.

We will next cite the statute regulating sales by sheriffs, which has received the adjudication of this court. It is in these words: "And the sheriff or other officer, shall give, in the case of personal property, at least ten days' public notice, and, in case of lands, at least thirty days," &c. Hutch. Code, 902, § 22. The language of these statutes is, in meaning, the same. In the case of *Minor* v. *The Selectmen of Natchez*, 4 S. & M. 619, this court held, that a failure to advertise land, or to give the notice required by the statute, did not vitiate the sale made by the sheriff. The language of the two statutes being almost identical, and certainly the same in meaning, a construction of one, must necessarily be a construction of the other. Both the

sheriff and the executor or administrator must conform to the requirements of the law, as to the mode of selling property in their official character, by public sale; whether a sale thus made will be upheld, must, of course, depend upon the circumstances surrounding it. It may certainly be fair, and the property bring a full price upon even less notice than that required by a sheriff on a sale of personal property. If the failure to give the notice in the mode pointed out by law, renders the sale void, then the notice is a condition precedent to the sale, and constitutes an important link in the purchaser's claim of title. This rule would not only be inconvenient in its operation, but would deter persons from purchasing property at public sales, as but few could ever certainly know that notice conforming to the letter of the law had been given. We are, therefore, of opinion, that the failure to give the notice did not render the sale void; and if voidable, the plaintiff in execution having no ultimate right in the property, but only in a fair conversion of it, must show that this conversion was not fairly made; or an injury which will be sustained by him, if the sale is permitted to stand. For it may be true that the legatee or distributee can avoid the sale, but it does not follow that the creditor can do so. The property has already been converted for the benefit of the creditor, in a manner apparently legal, and at the same time beneficial to the interest of distributees, by a public sale and on a credit. To grant the demand of the creditor in this case, one of these advantages, a sale on a credit, would be lost to the distributee, for whose benefit we have already seen the statute requiring an order of the orphans' court before a sale was enacted.

We deem it unnecessary to decide the other question made as to the validity of the resignation of Mrs. Douglass of her letters testamentary, as it relates entirely to her power to purchase at the sale of her testator's estate. If she possessed no power to purchase, it is very clear that she acquired no title to the slaves in controversy. But we are of opinion, that her purchase was not void, but only voidable. Under this view of the question, the sale could only be set aside at the suit of a creditor, upon his showing that it was not fairly made; and that

Bland et ux. *v.* Muncaster.

without a resale, the estate would be insufficient to pay the debts existing against it, and this upon the plain principle that a party can never invoke the aid of a court of justice except to place him in the possession or enjoyment of a right withheld by the adverse party.   If the proceeds of the sale are sufficient to pay the debts of the estate, then creditors have no right to question its validity, as there has been an act of administration in discharge of the first duty required of the executors, viz.: to pay the debts of the deceased.

We have said that Mrs. Douglass's purchase wasnot void, but only voidable.   As this is a new question in this court, we will cite some of the authorities on this point.   In the case of *Baines* v. *McGee*, 1 S. & M. 218, this court said: "It is conceded in argument, that the purchase of property by an administrator at his own sale, is voidable for purposes of justice.   This admission is certainly not repugnant to law, and goes far enough for the present case.   Whether we would go further, and pronounce such a purchase void, we leave to be determined when it becomes necessary to pronounce an opinion."

In the case of *Den* v. *McKnight*, 6 Halstead, the court said, in speaking of such purchasers, "that the expression used by the court in *Den* v. *McKnight*, 2 Halstead, 175, that such sales and conveyances are void, is too strong.   They are voidable, not void..   They may be avoided by the *cestuis que trust* or their heirs.   Strangers or third persons cannot impeach or question them."   The same principle was recognized in the case of *Litchfield* v. *Cudworth*, 15 Pick. 31, where the court said, "that trustees of every description, who have power to sell, can never, by direct or indirect means, become the purchasers of trust property.   But this principle does not render the sale absolutely void.   Strangers to the property cannot call it in question.   It is voidable."   Other authorities to sustain this principle might be cited; but we deem it unnecessary to do so, as we believe but few can be produced on the other side of the question.

We have examined the only important questions, the validity of the sale, and Mrs. Douglass's power to purchase, without any special reference to the instructions of the court to the

jury on the several questions made in the court below. It will, however, be seen that the sale, not being void, after its confirmation by the probate court, must be treated as valid, till the order of confirmation shall, in the proper manner, be vacated. This of course cannot be done by a collateral proceeding in the circuit court, except for fraud in procuring the order.

We give no opinion as to the statute of limitations constituting a bar to the remedy of the plaintiff in execution in this case, as the merits of the controversy appear to be involved in the points decided.

Judgment reversed, and *venire de novo* awarded. ·