## James Hoel *v.* Elizabeth Coursery.

Where G. was the owner of certain lots of land, and by his will directed them to be sold by his executors, which was done, and B. became the purchaser, who sold them to E. B., and received payment therefor from E. B., who died without receiving a deed for the lots; but a deed to them was afterwards made to E., the administratrix, and wife of E. B.; but H. being in possession of the lots, claimed them, by virtue of a purchase from persons who derived their title from the heirs of E. B. *Held*, that E., in equity, is regarded as a trustee, holding the title of the lots for the benefit of the heirs of E. B.

Where a sale is made by a guardian of his ward's property, the statute requires the sale to be reported to the first term of the probate court, after it is made.

H. may be treated in all respects as a tenant in common with the other heir of E. B.; but this heir not being made a party to the bill filed, no claim for improvements upon the property can be considered by the court.

On appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

Hoel filed his bill against the appellee to enjoin an action of ejectment in Claiborne circuit court, brought to recover a town lot in Port Gibson. The bill as amended states, that S. Gibson was the owner and possessor of it at the time of his death, and that he left a will attested by three witnesses, authorizing his executors to sell his real estate. That the will was admitted to probate; and that, pursuant to the will, the executors sold the lot in question to P. Briscoe, who conveyed it to the appellee as administratrix of Elijah Bland, she being then named Elizabeth Bland, and widow of said Elijah Bland, deceased. That she afterwards married J. Coursery, who has since died. The bill denies that appellee has any title to the property, and charges that the probate of the will is void, because proved by only one witness, and therefore the sale to Briscoe, and the conveyance by him to appellee are void; and that Briscoe sold the lot to Bland in his lifetime, and received the purchase-money. That Bland died before the deed was made, and Briscoe conveyed the lot to appellee as his administratrix. That this was a conveyance to the estate of Elijah Bland, and not to appellee. That Bland left three children, Richard, Sarah, and Susan, and appellee therefore had only a dower interest, which she never claimed, and therefore she is in no respect entitled to maintain the suit.

That appellant is in possession of the lot as a *bonâ fide* owner, and he and those under whom he claims have been in possession since 1833. That he and those under whom he claims have erected valuable improvements on the lot, to which appellee did not object, though she lived only twenty miles off, in view of the improvements, and they had no notice of her title.

That appellant and one Moore purchased the property of Sutton, 16th July, 1839, and he has been in possession ever since. That Sutton was in possession long previously. That, at the time of their purchase, he and Moore agreed that he should hold the part he is now sued for, and Moore the other part.

That he is also the owner of the title of the children and descendants of Elijah Bland, deceased, and that, if appellee is

entitled to recover at law, she is liable to pay for the improvements, which are a lien on the property. He prays that the probate of Gibson's will, and the deeds to and from Briscoe, be declared void, or that the deeds be held to enure for his benefit, and that appellee be required to convey the property to him, and that the ejectment be perpetually enjoined, or otherwise that he be paid for the improvements, and have a lien on the property therefor.

The answer admits that Gibson was the owner of the property; that he left a will duly attested, with direction to sell the lots, and Briscoe became the purchaser. Briscoe sold it to Bland, and received the purchase-money, and that after Bland's death, Briscoe conveyed the lot to appellee as administratrix of Bland. She insists that she thereby became invested with the legal title, with power to assert it against all the world, except the heirs of Bland.

Admits that Gibson's will was admitted to probate on the testimony of one witness. Insists that if the probate is void, and also the sale made by the executors as alleged in the bill, then the relief of appellant is at law, and he ought to make his defence at law, and insists on this point as on demurrer; but contends that the probate is not void, and if void, that the sale by the executors without a probate of the will is valid.

Admits that Bland left three children as charged, but denies that appellant is the owner of the title or claim of said children. Denies that she holds the property in trust for appellant, but alleges that she prosecutes the ejectment as well for the benefit of the surviving children of Bland as for herself, and with their consent and privity.

Denies knowledge of the conveyances under which appellant claims, and insists, that if they exist, they show no title in him. Denies knowledge of any improvements made by appellant, or those under whom he claims; has never seen them, and they were erected without her knowledge or consent. Believes appellant had full knowledge of her title, all the time, as it was on record; states that said improvements, if any, were made prior to March 5, 1846, and denies that appellant is entitled to be paid for them, or to any lien on the property.

Insists, that if all the allegations of the bill were true, appellant has an ample remedy at law, and relies on the proceedings at law as a bar to all relief.

A demurrer to the bill had been overruled before the answer was filed. The chancellor decreed in favor of Mrs. Coursery, dismissing the bill, and Hoel appealed to this court.

*Thrasher* and *Sellers* for appellant.

The complainant Hoel was invested with the complete ⋅ equitable title to the lot; but the defendant held the naked legal title. Hence the complainant could not resist defendant's naked legal title in the action of ejectment, by showing a perfect and complete equitable title in himself; according to the decision of this court in the case of *Thompson* v. *Wheatly*, 5 S. & M. 499, in which the court recede from the principle laid down in *Brown* v. *Weart*, 7 How. 181.

Whereupon the complainant filed his bill in the superior court of chancery, to be relieved in the premises, enjoining the proceedings at law. Whence the cause is brought to this court by an appeal from the decree of the chancellor dismissing the bill.

Both parties claim title from the same common source, to wit, from Briscoe, and therefore each of them are estopped from denying Briscoe's title. *Huntington* v. *Prichard*, 11 S. & M. 327.

Elijah Bland (since deceased) bought the property in controversy in his lifetime from Briscoe, and paid him for it. He took no deed at the time from his vendor, because Briscoe's title was imperfect.

But Briscoe undertook to make title, as soon as he should acquire it; but in the mean time Bland had died, and the defendant Elizabeth Coursery had administered on his estate, and Briscoe, thinking that she was the proper person to make title to, executed and delivered his deed to her, as administratrix of Bland, solely in consideration of his contract with Bland, and receiving from her no consideration whatever.

The property therefore belonged to Bland's children or heirs, and defendant held the naked legal title as trustee for them,

and her deed from Briscoe enures to their benefit; and complainant holds their title as a *bonâ fide* purchaser for a valuable consideration, having purchased of one of the heirs of full age, who had purchased the other heirs' interest in the lot, at a guardian's sale.   See authorities, full on this point.   2 Fonb. Eq. 115, 118, (note); 2 Story's Eq. § 1211; 1 Johns. Ch. R. 36; 5 Ib. 409; 5 Atk. R. 53; 2 Story's Eq. § 1261; 1 Ib. 321, 322; 4 Paige, Ch. R. 621; 2 Johns. Ch. R. 252; 5 Ib. 48, (note a); 8 Wheat. 441; 1 Powell on Mort. 124, (note 1).

The defendant being thus in possession of the legal title to the lot, although she holds nothing but the naked legal title, could maintain successfully her action of ejectment, not only against complainant, but even against Bland's own children, if in possession of the property; for a court of law in trying an action of ejectment looks steadily at the legal title, and cannot regard the equitable rights of the parties.   5 S. & M. 499.

In 2 Story, Eq. 607, 608, it is said that "where an innocent purchaser for valuable consideration without notice of any infirmity in his title, has by his improvements and meliorations added to the permanent value of the estate, he is entitled to a full remuneration; and that such increase of value is a lien, and charged on the estate, which the absolute owner is bound to discharge before he is to be restored to his original rights in the land; and that this doctrine is founded upon the most persuasive equity, common sense, and common justice."   1 Story, Eq. 478, 494–499; 8 Price, 518; 3 Powell, Mort. 957, n. Q; 2 Greenl. Ev. § 549, n. 1; 2 Kent, Com. 334–338.

In *Bright* v. *Boyd*, 1 Story, R. 478, Judge Story says: " Take the case of a vacant lot in a city, where a *bonâ fide* purchaser builds a house on it, enhancing the value of the estate to ten times the original value of the land, under a title apparently perfect and complete; is it reasonable or just that, in such case, the true owner should recover and possess the whole, without any compensation whatever to the *bonâ fide* purchaser?   To me, the idea seems manifestly unjust and inequitable, thus to appropriate to one man the property and money of another, who is in no default.   The argument is, the moment the house is built, it belongs to the owner of the land by operation of

law, and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law. It is not answering the objection, but merely and dryly stating that the law so holds."

And the learned judge concludes the case by giving the value of the improvements to the *bonâ fide* purchaser. 2 Greenl. Ev. § 549, n. 1.

*H. T. Ellett* for appellee.

The appellant must succeed, if at all, upon the case made by his bill. We admit, for the purposes of this cause, that the law and the fact are as he states them. The chancellor, too, concurred with him, and of course dismissed his bill; for if the plaintiff at law has no legal title, there was no foundation for relief in equity, nothing indeed to relieve against. He was safe at law, for his possession could not be disturbed by any thing short of a good legal title. 1 Story, Eq. Pl. 373, § 473.

Having made his case in his own way by his bill, the appellant cannot ask for a decree on the ground that he has proceeded upon a mistake, either of the law or the facts.

Again; it is clear that by the circumstances of the sale by Briscoe to Bland, and the payment of the purchase-money by Bland, and the conveyance of the property, after his death, to his administratrix, she became seized of the naked legal title only, and the whole beneficial interest vested in the heirs of said Bland. So the case is expressly put by the bill, and we admit that it is so. The bill further goes on to aver that the appellant is also the owner of all the title and claim of the children and descendants of said Bland. Upon this case, too, which admits the validity of the will and the sales under it, the bill was properly dismissed, for the appellant had a good defence at law. Although the general rule is, that an equitable title cannot at law be successfully opposed to the legal title, yet the exception to the rule is equally well established. And in all cases like the present, the *cestui que trust* is considered as possessing not only the equitable, but also the legal title, so as to be able to defend or maintain ejectment for the land. 2 Wend. 109, 134; 7 Ib. 379; 11 Johns. 437; 2 Rand. 422; 6 Munf. 38.

The point is fully settled in the case of *Brown* v. *Weast*, 7 How. 181.

In no case can an original bill be sustained for such a purpose. The language of the books is emphatic. " Where a *bonâ fide* possessor of land has, by inadvertence or mistake as to his title, made improvements, the true owner knowing of it, and not interfering to correct the mistake, if the true owner is obliged to resort to equity to recover the property, the court will make him pay for the improvements. But courts of equity have simply confined themselves to the administration of the equity in cases where their aid has been invoked by the true owner in support of his equitable claims. They have never enforced, in a direct suit by the *bonâ fide* possessor, his claim to meliorations of the property from which he has been evicted by the true owner." 2 Story, Eq. 126, § 799, b.; Sugd. Vend. ch. 16, § 10; Ib. ch. 22, § 1; *Green* v. *Winter*, 1 Johns. Ch. R. 26, 39; Ib. 385; 12 Vesey, 84; 6 Paige, 390; 2 Kent, Com. 334–336.

" Where the true owner can recover the estate at law, a court of equity will not, unless there is some fraud, relieve a purchaser or *bonâ fide* possessor on account of money laid out in repairs and improvements." 2 Story, Eq. 604, § 1238; 2 Kent, 334; *Green* v. *Biddle*, 8 Wheat. 1.

After these emphatic assertions of the rule on this subject, it is a little singular that Judge Story himself should have labored so hard to subvert it, as he has done in *Bright* v. *Boyd*, 1 Story, R. 478.

An able writer and annotator has well said of that case : " The numerous extracts from digests of Scotch and Roman law, which are relied on for that opinion, furnish no answer to the observation of WASHINGTON, J., in *Green* v. *Biddle*, that to clog the owner's recovery of his land with the necessity of paying before he gets it, is to take from a man the enjoyment of his legal property without any default on his part, which is against all reason and justice." Notes to the case of *Aslin* v. *Parker*, 1 Smith, Lead. Ca. 373.

*Green* v. *Biddle* decides that a retrospective act of legisla-

tion, creating the right of compensation for improvements, is unconstitutional.

Our statute has given the right in certain cases, and furnished a full remedy at law. Hutch. Code, 856.

But if the court should be of opinion that the bill is sustainable, and that appellant could not have defended himself at law against our naked legal title, the question will then arise, how far the appellant is entitled to relief.

The appellee, by the deed from Briscoe, became seized of the legal title in trust for the three children of Elijah Bland, Richard, Sarah, and Susan. On the death of Richard J. Clarke, the last lineal heir of Sarah, her share descended to Richard and Susan Bland in equal parts; and they thereby became each entitled to an undivided half of the whole lot. Richard having sold one third to the theatre company, and the other two thirds to Renaud, and Moore and Hoel being the claimants in several parts of what was conveyed to Renaud, it follows that the appellant Hoel is entitled to the beneficial interest of one half of the land that he is in possession of, and that Susan McComb is entitled to the other half, the legal title being in the appellee for the whole lot. Hence Hoel would be entitled to relief as to the undivided half of that part of the lot which he holds in possession. And this we do not at all dispute. We have never sought or claimed a right to recover against him in the ejectment at law, or in chancery, more than the undivided half.

Mr. Justice FISHER delivered the opinion of the court.

The object of this bill is to enjoin the appellee from further prosecuting an action of ejectment, brought in the circuit court of Claiborne county, to recover certain lots situate in the town of Port Gibson, in the possession of the appellant.

The bill alleges that one Samuel Gibson, in his lifetime, was the owner of the lots; that by his last will and testament, he directed them to be sold by his executors; that, acting under this power in the will, they sold the premises to Parmenias Briscoe, who sold the same to Elijah Bland, the husband of the

Hoel *v.* Coursery.

appellee, and received payment therefor from Bland; that he died without receiving a deed from Briscoe, and that the deed was afterwards made to the appellee, as the administratrix of her deceased husband, Elijah Bland.

The complainant alleges that he is in possession of the premises by virtue of a purchase from persons who derive their title from the heirs of Bland; and that, inasmuch as he in his lifetime paid the purchase-money to Briscoe, the appellee ought in equity to be treated as a trustee holding the title for the benefit of Bland's heirs. The general correctness of this position cannot be controverted, except so far as the dower interest of the appellee may be concerned; a question which it is not necessary at this time to decide, as she has died without having it allotted to her in the mode prescribed by law.

Assuming that the lots were held in trust by the appellee for the heirs of Bland, a position about which there can be no controversy, the case is narrowed down to a mere question of fact, to wit, whether the allegation of the bill, that complainant is in possession under a title derived from Bland's heirs, is true. So far as the title of R. J. Bland, one of the heirs, is concerned, the testimony shows that he conveyed his interest on the 23d of February, 1837, to one Renaud, who afterwards conveyed to the persons from whom complainant claims title. It is, however, unnecessary to be minute in the statement of these several conveyances, as the right of R. J. Bland to one undivided moiety of the property is admitted by the answer; and it may therefore be stated, in general terms, that to the extent of this interest, the appellee ought to be perpetually enjoined from disturbing the possession of the complainant.

In regard to the interest of the other heir, there is nothing amounting to evidence, showing that she has ever parted with her title, or that it has ever been legally divested. The facts are these. She was in 1834 a minor, and the ward of her brother, R. J. Bland. It appears that he, as her guardian, obtained an order of the probate court of Claiborne county, authorizing him to sell her interest in the lot; that he accordingly made a sale, and became himself the purchaser, on the 4th of April, 1835. A report of the sale appears to have been made to

the court on the 22d of June, 1835; but there is no order of confirmation of the sale till the October term, 1841, of said court. This is all the evidence on the subject. Admitting that the order to sell was regularly made, and that the guardian could become the purchaser at his own sale, or in other words, that he could be both vendor and vendee, it does not appear that the sale was ever perfected by the execution of a deed conveying the ward's interest in the premises, or that the guardian ever paid the amount of his bid; without this showing, it certainly could not be pretended that a court of equity, at this late day, would sanction the purchase by the guardian.

But there is still a more fatal objection to the sale. No report of it appears to have been confirmed by the probate court till October, 1841, more than six years after the sale had been made, and nearly a year after the death of the guardian. The statute requires the sale to be reported to the first term of the court, after it is made. The party interested, knowing the day of sale, would know from the law prescribing the guardian's duty in this respect, what term of the court to attend, to enter her objections against the application for confirmation of the sale. Notice of the time of the sale might be construed to be notice to attend court at a particular term to interpose her objections against the action of the guardian. But it could not be held to be notice for any other term, unless the record showed a continuance of the application; and hence, the order made in October, 1841, without notice to the ward, must be treated, to say the least, as voidable, if not absolutely void.

We are therefore clearly of opinion, that, as to the interest of this heir, the bill is not sustained by the testimony; and that the action at law ought to proceed to trial and judgment for the appellee, or those representing her as heirs. The judgment, however, not to be enforced against the interest of R. J. Bland in the possession of the complainant.

The complainant may be treated in all respects as a tenant in common with the other heir of Bland, and may assert against her such claims or rights as one tenant in common may assert against his cotenant. But as this heir was not made a

party to the bill in the court below, no claim for improvement upon the property could, for this reason, be considered by the court; and hence we give no opinion upon this branch of the case.

The decree of the chancellor will be reversed, the cause remanded to the court below, with directions for that court to ascertain what portion of the premises is in the possession of the complainant, by virtue of the conveyance of R. J. Bland, so far as the same conveyed his interest as one of the heirs of Elijah Bland, deceased, and that the present appellees, against whom this cause has been revived as heirs of Elizabeth Coursery, release such interest to the complainant. As to all other matters, we leave it to the chancellor either to dismiss the bill without prejudice, or to permit the complainant, if a sufficient showing shall be made, to amend the bill, and to proceed to final hearing as to such matters.