Learned et al. *v.* Matthews.

40  210
74  718

40  210
79  191

40  210
j91  125

## C. E. LEARNED and others *v.* J. R. MATTHEWS.

1. POWERS: EXECUTION OF.—Every naked power, not only as between private persons, but as applied to acts of public officers and to the proceedings of courts of limited and special jurisdiction, must be strictly executed, and all prescribed formalities observed.

2. POWER OF LEGISLATURE: ADMINISTRATION OF ESTATE, TRANSFER OF FROM ONE COUNTY TO ANOTHER.—The legislature has the power to transfer, by special act, the administration of an estate from the county in which intestate was domiciled, to any other county.

3. PROBATE COURT; JURISDICTION OF, WHEN CONFERRED BY PRIVATE ACT OF THE LEGISLATURE:—Where the jurisdiction of the probate court is derived from a private act of the legislature, and there are certain conditions imposed by the act, the execution of which is not contingent upon, but ancillary to the jurisdiction, the court will be vested with jurisdiction, though the conditions may not be strictly and literally complied with.

4. SAME: CASE IN JUDGMENT.—The legislature enacted that the administration of the estate of L. (which had been originally administered upon in Hinds county), should be transferred to Copiah county, and that the judge of the Probate Court of Hinds should transmit to the Probate Court of Copiah a full and complete record of the administration, which should receive the same, and assume jurisdiction as if, originally, letters of administration had been granted in that court.   Held— That the failure of the probate judge of Hinds to transmit a *full* and *complete* record of the administration, did not affect the jurisdiction of the Probate Court of Copiah.

5. PROBATE COURT: RES ADJUDICATA.—The filing of a petition for the sale of all the lands of an intestate for the payment of his debts, where the citations to the parties in interest represent the petition as being for only part of the lands, and the petition is dismissed as to all the land, except as to one parcel, does not preclude the administration from presenting a subsequent application for the sale of the lands not mentioned in the citation.

6. SAME: CASE IN JUDGMENT.—H., administrator of L., petitioned the Probate Court of Copiah county to sell all the lands of his intestate for the payment of debts.   Citations were issued to the parties interested, citing them to answer the petition of H., administrator of L., for sale of *only part* of the lands described in the petition.   The petition dismissed, except as to one parcel of land.   Held—That H. was not precluded by the decree rendered on the first petition from making an application for sale of other lands than those described in the citation.

7. SALE OF LANDS FOR PAYMENT OF DEBTS: PETITION FOR; REQUIREMENTS OF.—A petition in writing is not required by statute (Hutch. Code, 666, article 98), for sale of lands for payment of debts, and an account of the personal property and debts, though required, yet its omission does not so affect the jurisdiction as to render the decree of sale void.   *Eldridge* v. *McMakin*, 37 Miss. 72.

Learned et al. *v.* Matthews.

8. SALE OF LANDS FOR PAYMENT OF DEBTS: EFFECT OF FAILURE TO CONFIRM.—A sale of lands for the payment of debts under a decree of the Probate Court, is inoperative to pass the title to the purchaser until the sale has been reported to, and confirmed by the court. 3 S. & M. 326; 26 Miss. 571; 24 Miss. 62; 38 Miss. 100; *Smith* v. *Chaplain*, October Term, 1861.

9. SALE OF LANDS FOR PAYMENT OF DEBTS: EFFECT OF CONFIRMATION OF SALE AFTER SUCCEEDING TERM.— port and confirmation of a sale of lands for the payment of debts. made to the Probate Court after the term succeeding the sale, is inoperative to pass title, unless notice is given to the parties whose interests are affected by the sale.

10. SALES UNDER DECREES OF CHANCERY COURT: NECESSITY OF CONFIRMATION OF.— A sale made by a Commissioner in Chancery, under a decree of the Chancery Court, does not vest the title to the property in the purchaser, unless reported to, and confirmed by the court. 1 Sugden Vendors, 66; Freeman's Ch. R. 265; S. & M. Ch. R. 518; 4 S. & M. 210; 3 S. & M. 493; 7 S. & M. 206.

11. CONFIRMATION OF SALE: PRESUMPTION OF, FROM LAPSE OF TIME.—Whether the doctrine of presumptions applies to records and public documents.— *Quere*. But certainly, where there is no proof that any of the papers of the administration have been lost or destroyed, no order of confirmation found, no notice of any such application and the facts of recent date, the court will not supply the evidence of want of confirmation by presumption.

12. PRACTICE IN "HIGH COURT."—Questions not raised in the court below will not be considered by the High Court of Errors and Appeals.

ERROR to Circuit Court of Copiah county. Hon. John E. McNair, judge.

The opinion of the court recites fully the facts of the case.

*H. B. Mayes*, for plaintiff in error, contended,

1. That the Probate Court of Copiah county never acquired jurisdiction by virtue of the special act for the relief of Harris, because the probate judge in Hinds did not transfer and transmit to the court in Copiah county, a full and complete record of the administration of Harris.

The intestate of Harris was domiciled at the time of his death in Hinds county. The Probate Court of that county had jurisdiction to grant administration; the jurisdiction was exclusive, and became so, in the strictest sense of the term, by the grant of administration to Mrs. Learned. Hutch. Code, 655, section 54. *Wright* v. *Beck*, 10 S. & M. 281.

Whatever jurisdiction, then, the Probate Court of Copiah had, it acquired by virtue of the special act of the legislature.

" Where statutory powers are conferred upon a court of inferior jurisdiction, and a mode of executing those powers is prescribed, the mode pointed out must be strictly pursued, or the acts and judgments of the court are *coram non judice*, and void." *White* v. *Conner*, 5 Blachford, 462, 469 ; Bacon's Abdg. 261 ; 1 W. W. Story's R. 487 ; 1 Story's Eq., sections 96–177 ; *Williamson* v. *Williamson*, 3 S. & M. 447.

2. It was insisted that the petition of Buckner Harris, filed the 19th day of April, 1841, praying an order for the sale of the real estate of Learned, deceased, was finally dismissed, as to the lands in Copiah county, at the June Term, 1841, and the subsequent proceedings had on said petition by citation returnable to August Term, 1843, and the decree then made for the sale of the lands was and is void.

" If at any time the Probate Court may open and reverse its own judgments, litigation would be endless." *Smith* v. *Denson*, 2 S. & M. 339 ; *Trumbull* v. *Endicott*, 3 S. & M. 303 ; *Griffiths, admr.,* v. *Vertner*, 5 How. 741 ; *Austin* v. *Lamar*, 23 Miss. 190 ; *Singleton* v. *Garrett*, 23 Miss. 195.

3. That the failure to have the sale reported and ratified at the Term next succeeding the sale, was fatal to the title of defendants in error. *Robb* v. *Halsey*, 11 S. & M. 140 ; 30 Miss. 263 ; *Smith* v. *Deason*, 2 S. & M. 338 ; *Hoel* v. *Coursery*, 26 Miss. 520.

4. On the question of adverse possession the following authorities were cited : Hutch. Code, 830, section 5 ; 1 S. & M. 219, 530 ; 1 How. 561.

*W. P. Harris* and *Hurst*, for defendant in error.

1. That the special act of the legislature, for the relief of Buckner Harris, gave the Probate Court of Copiah county jurisdiction of the administration of the estate of Learned, deceased.

That the transfer of the jurisdiction from the Probate Court in Hinds was not made to depend upon the character of the transcript sent ; that the act annexed no such conditions to the assumption of jurisdiction.

This special act is different from that which is discussed in *Williamson* v. *Williamson*, 26 Miss. There the act made the giving of a bond an indispensable condition precedent to the assumption of jurisdiction.

2. That the sale of the lands is shown to be valid as to notice, and fair and *bonâ fide*. The court has jurisdiction to decree the sale, and a sale was made in accordance with law and the decree of the court.

That the act of the administrator, a ministerial officer, in a matter not pertaining to the manner in which he had executed the decree of the court, but in making timely report of the execution, should render the sale inoperative and void; such a doctrine finds no analogy and sanction in any system of jurisprudence.

The statute requires a report at the next succeeding Term. "Suppose the administrator should die between the sale and the time for making his report?" This is not an improbable event. Would the sale be void? There could be no report in such case, and yet the sale may be contested and set aside, or confirmed, nevertheless. The court has acquired jurisdiction; the sale has been made and the deed executed. Can it be contended that the law was in such a state, that this probable event, or other casualty interposing to prevent a report at that particular time, would render the previous proceedings abortive?

It is analogous to chancery sales, and the failure of the commissioner to report the sale would not avoid it, nor render the court powerless to obtain information of it. *Eldridge* v. *McMakin*, 38 Miss. 72.

That confirmation of the sale must be presumed from lapse of time. Matthews on Presumptive Evidence, 217, 218; 467, 468.

Parties interested, according to the principle in analogous cases, will be held to have received confirmation of the sale. *Gardner* v. *Lee*, 26 Miss.

ELLETT, J., delivered the opinion of the court.

The plaintiffs in error on the 17th day of August, 1858, com-

menced an action of ejectment, in the Circuit Court of Copiah county, against the defendant in error, to recover a tract of land in said county, containing two hundred and sixty acres, and being the north half of the north-east quarter of section three, township nine, range seven east; the south-east quarter of section thirty-four, and the west half of the south-west quarter of section thirty-five, township ten, range seven, east. The defendant pleaded not guilty. At October Term, 1860, a verdict was found for the defendant, and the plaintiffs moved for a new trial, on the ground that the court erred in overruling the motion of the plaintiffs to rule out the evidence offered by the defendant. The motion for a new trial was overruled by the court, and a bill of exceptions was signed setting forth the evidence given and the proceedings had upon the trial. From this bill of exceptions it appears that the plaintiffs proved the entry of the land in controversy, in the United States Land-office, by Edward D. Learned, in 1835 and 1836; and also that the said Edward D. Learned was married on the last day of January, 1825, and died on the 27th of September, 1837; and that the plaintiffs—Charles E. Learned, who was born May 15, 1826, and Rufus F., who was born December 26, 1834—are his only surviving heirs-at-law.

It was agreed that all the evidence on the part of the defendant should be given subject to be excluded and ruled out by the court, on motion of the plaintiffs, after the evidence on both sides should be finally closed, when all objections to the evidence should be stated, argued and submitted, as though taken at each step in the progress of the cause.

Subject to this agreement, the defendant gave in evidence an act of the legislature of the State, approved February 13, 1840, entitled " An act for the relief of Buckner Harris," as follows:

" *Whereas*, the Honorable Buckner Harris has become the administrator in the county of Hinds, of the estate of the late Edward D. Learned, deceased; and *whereas* the estate of the said deceased consists chiefly of land which is situate in the county of Copiah, where the said Buckner Harris resides; and *whereas* it is attended with great inconvenience to said administrator

Learned et al. *v.* Matthews.

(being a public functionary), to attend the Probate Court of said county of Hinds, and would be to the advantage of said estate to have the same administered in the county of Copiah.

Therefore, Sec. 1. *Be it enacted*, etc., That the judge of probate in and for the county of Hinds be and he is hereby authorized and required, at the cost and charges of the said Buckner Harris, to transfer and transmit to the judge of probate of the county of Copiah, a full and complete copy of the record of all proceedings heretofore had in the Probate Court of said county of Hinds, in relation to the estate of said Edward D. Learned, deceased, together with the original administration bond entered into by said Harris.

Sec. 2. *Be it*, etc., That the probate judge in and for the county of Copiah, be and he is hereby authorized and required to receive said record and original bond, and to enter the same on the records of this court, and to require the said Buckner Harris to administer and conduct the affairs of said estate, and account for the same, in the same manner as if letters of administration had been originally granted by the Probate Court of the county of Copiah.

Sec. 3. *Be it*, etc., That this act shall be in force from and after its passage.

The defendant then gave in evidence an order of the Probate court of Copiah county, at April Term, 1841, "that the transcript of the proceedings of Buckner Harris, administrator *de bonis non* of the estate of Edward D. Learned, deceased, from the Probate Court of Hinds county, be received and filed for record."

Also a copy of the said transcript, which contains the bond given by B. Harris as administrator *de bonis non* of E. D. Learned, dated July 22, 1839, and purports to contain "the proceedings had and done in relation to the estate of Edward D. Learned, deceased, in the Probate Court of Hinds county, since Buckner Harris, the administrator *de bonis non*, has taken the estate into his charge;" and it is certified by the clerk of the Probate Court of Hinds county, to be a true copy from the records of his office, "so far as Buckner Harris, administrator *de bonis non*, has administered said estate."

Defendant also gave in evidence a copy of a petition filed by Harris, as administrator *de bonis non* of Learned, in the Probate Court of Copiah county, at April Term, 1841, representing briefly, that the personal estate is insufficient to pay the debts due by said deceased, and praying an order for the sale of the real estate. This petition is dated April 19, 1841, and is signed by Harris, but not sworn to.

Also, an order of the said court made at June Term, 1843, as follows: "Ordered, that notice by citation be given to all persons interested in the real estate of Edward D. Learned, deceased, commanding them to be and appear before the Probate Court of Copiah county, at the court-house thereof, on the third Monday, the 21st day of August next, to show cause, if any they can, why the administrator *de bonis non* of the estate of Edward D. Learned, deceased, should not then be authorized to sell all the real estate belonging to said estate, for the benefit of the creditors of the said estate, and that said citation be published according to law."

Also, an order of the same court made at August Term, 1843, reciting that the court was satisfied that the personal estate of Learned was not sufficient to pay the demands against it, and that due notice had been given according to law to all persons interested to appear at that term to show cause, etc., and ordering the administrator *de bonis non* of said Learned to expose to public sale on a credit of twelve months, a large quantity of land, particularly described in the order, and embracing the land in controversy in this cause.

The defendant then read in evidence a deed from B. Harris, administrator of Learned, to George M. Barnes, dated May, 1844, and acknowledged February 1, 1845, reciting a rule made May 13, 1844, under the last-named order, and conveying a large portion of said land (containing $3,568\frac{56}{100}$ acres), including the land in controversy, to said Barnes, for the price of $650. Also, a deed from Barnes and wife to defendant for the land in controversy, dated February 2, 1853.

George M. Barnes, the purchaser at said sale, was examined as a witness, and testified that the sale was regularly adver-

tised, and that it was a *bonâ fide* purchase and sale, and that he bid off the land at the sale, and paid the purchase-money by giving credit for the amount on a judgment in favor of Joseph Cooper against the administrator of Learned. Witness also stated that in November, 1847, said Harris sent for him and told him he wanted to make a final account and report of sale of the lands of the estate of E. D. Learned. He recognized the original account and report produced and shown to him. Witness wrote them under the direction of Harris, the administrator. The account was sworn to and signed by Harris before the judge of probate, and the report of sale was signed by him; and the account and report were both returned by Harris to the Probate Court at November Term, 1847, and delivered to the clerk.

The said account and report were read in evidence. The former shows that the money received on the sale of the land, and also the sum of $500 received from Joseph Cooper for the sale of the lot in Jackson, were credited on a judgment in favor of said Cooper. The latter is a full and formal report of a sale of the town lot in Jackson, on the 15th of September, 1842, under an order of the Probate Court of Copiah county made at June Term, 1841, to Joseph Cooper, for $500; and also of the sale of upwards of three thousand five hundred acres of land in Copiah county to George M. Barnes and Thomas E. Wheeler, on the 13th of May, 1844, under the order made at August Term, 1843, for the price of $780. This report is not under oath, and it is admitted that it, and also the account, were indorsed by the clerk, filed November 17, 1847.

E. D. Brower was also examined as a witness on the part of the defendant, and testified that about November, 1847, he had been elected clerk of the Probate Court of Copiah county, and was not well versed in his duties; that the papers were rather loosely kept; that about that time a fire occurred near the court-house, the jail being burned; that the papers were thrown out, and some of them he could never after arrange or get in their proper places; and that many papers were filed that should have been recorded, but were not.

On inspection of the minutes of the court, it appeared that the court was open on the 15th and 16th days of November, 1847, but not on the 17th. Thomas E. Wheeler, another witness for defendant, testified that he was present at the sale and bought a piece of land for his brother; that he first knew of the sale by seeing the advertisements; and that the sale was public, and made at the court-house door.

The foregoing was all the evidence on the part of the defendant.

The plaintiff, then gave in evidence a full transcript of all the proceedings had in the Probate Court of Copiah county in the administration of the estate of said deceased, whereby it appeared that, at April Term, 1841, on filing the above-mentioned petition of Harris, the administrator, dated April 19, 1841, representing the insufficiency of the personal estate to pay the debts, and praying an order for the sale of the real estate, an order was made that citation issue to all persons interested in the lands and tenements of E. D. Learned, deceased, to appear at the June Term, 1841, to show cause why an order should not be made for the sale of section 6, township 10, range —, east; the north-west quarter of section 17, township 10, range 7, east; and section 9, same township and range, all in Copiah county, and also one town lot in the city of Jackson.

At June Term, 1841, an order was made which cited that, at the preceding April term, B. Harris, administrator *de bonis non* of E. D. Learned, deceased, had filed an application for an order to sell the following real estate (describing the land as in the previous order); that citation had been thereupon ordered, and had been duly published; whereupon W. Barnes, administrator of Mason Reynolds, filed objections to the granting of the order for the sale of the lands above described, lying in Copiah county, which objections were considered by the court as valid and sufficient, and it was therefore ordered by the court that the application, so far as it related to the land in Copiah county, be dismissed, and that the said administrator be authorized to sell the town lot in the city of Jackson.

At June Term, 1842, without any further showing of the insufficiency of the personal estate, a citation was ordered, and at

September Term, 1842, a sale was decreed of part of lot 14 in the town of Gallatin.

Then follows in the record the order made at June Term, 1843, already above set forth, and the order of sale made thereon at August Term, 1843, under which the land in controversy was sold.

To show that a full record has not been transmitted to Copiah county, as required by the act of the legislature, plaintiffs gave in evidence a transcript of all the proceedings in the Probate Court of Hinds county, showing that the widow of Learned had been appointed his administrator, at October Term, 1837, and had administered the estate until her letters were revoked in March, 1839.

In May, 1838, she had represented that the personal estate was insufficient to pay the debts, and had prayed an order for the sale of the real estate, but no proceeding appears to have' been taken upon it. At January Term, 1839, she had made a full report of the debts and assets of the estate, showing that the real and personal estate were insufficient to pay the debts, and thereupon the court had declared the estate insolvent, and had appointed commissioners to receive and report claims. No further step appears to have been taken with a view to the distribution of the estate among the creditors.

The plaintiffs also offered a copy of the bond of Harris, as administrator *de bonis non*, certified by the clerk of the Probate Court of Hinds county, on the 22d day of August, 1860, who states, in his certificate, that the "said original bond is now on file and record in my office."

The evidence being closed, the plaintiffs, in pursuance of the agreement, moved the court to rule out all the evidence on the part of the defendant, on the following grounds, to wit:

1. The special act of the legislature for the relief of Buckner Harris is unconstitutional and void, being in conflict with section 18, article 4, of the constitution of the State.

2. The said act confers the powers upon the judge, and not upon the Probate Court of Copiah county.

3. The probate judge of Hinds county did not transfer and

transmit to the probate judge of Copiah a full and complete copy of the record of all the proceedings had in relation to the estate of Learned, together with the original administration bond of Harris.

4. The appointment of Harris was void, because the record does not show any fact giving jurisdiction to the Probate Court of Hinds county to grant administration in chief to the widow of Learned.

5. The sale was inoperative, because never reported to, or confirmed by, the Probate Court.

This motion was overruled. The case went to the jury without instructions, and a verdict having been found for the defendant, the motion made for a new trial was likewise overruled.

The question of the constitutional power of the legislature to pass the "Act for the relief of Buckner Harris," under the operation of which this case has arisen, was expressly waived on the argument in this court, and the objections to the jurisdiction of the Probate Court of Copiah county to decree the sale under which the defendant holds the land in controversy, were vested entirely on two grounds:

1. The first of these is that the probate judge of Hinds county did not transfer and transmit to the judge of the Probate Court of Copiah county, a full and complete copy of the record of all the proceedings had in Hinds county in relation to the estate of Learned, together with the original administration bond entered into by Harris.

The argument in support of this objection is, that the jurisdiction of the Probate Court of Copiah county was derived from the special act of the legislature; that the transfer of the jurisdiction from the Probate Court of Hinds was the execution of a power created by law; and that such power must be executed strictly, in the mode pointed out by the statute; and authorities are cited to show that equity will not relieve against the defective execution of a power created by law. The principle is of very general application that, at law, every naked power, properly so called, must be strictly executed, and all prescribed formalities duly observed. It prevails not only be-

Learned et al. *v.* Matthews.

tween private persons, but applies also to the acts of public officers, as tax-collectors and the like, and also to the proceedings of inferior courts of special and limited jurisdiction. But the question in the present case is not the mere execution of a power, the conditions of which are ascertained, but whether the jurisdiction of the Probate Court of Copiah county over the administration of the estate of Learned, was made by the statute entirely contingent upon the previous transmission to that court of "a full and complete copy of the record of all the proceedings in relation to the estate" previously had in Hinds county. This depends upon the proper construction to be put upon the act. The power of the legislature to transfer the administration of the estate from Hinds to Copiah county, either with or without conditions, was not denied in the argument, and could hardly be successfully disputed. An attentive consideration of the language of the act in question shows clearly that the paramount object and intention of the legislature was to transfer the administration from one county to the other, and that the provisions in relation to the transmission of the record are only auxiliary to the main intent, and were designed to afford the court in Copiah the means of acting intelligently in the administration. Some foundation was necessary to be laid for the exercise of the jurisdiction, and the duty of laying that foundation was devolved by the act upon the judges of the two courts. It was made the duty of one of them to transfer and transmit the record, and of the other to receive and record it. This duty these officers undertook in good faith to discharge. They were obliged to determine for themselves, in the first instance, what was required of them. The one did transfer and transmit such a transcript as in his judgment fulfilled the demands of the law. The other received it, and by an order entered in the minutes of his court, directed it to be filed for record, and thereby adjudged it to be a compliance with the statute. It did contain all that related to the administration of Harris, but it omitted the proceedings that had taken place during the administration of Mrs. Learned. There is no suggestion that the omission was wilful or fraudulent. A strict and

literal interpretation of the act perhaps contemplated that all these proceedings would have been sent, but a failure to do so cannot be held to oust the court of the jurisdiction which it was plainly intended to confer upon it. The argument of the plaintiffs goes to the full extent that the omission of a single paper, or of a single entry, or any error in transcribing any of the proceedings, would render all the acts of the Probate Court of Copiah county absolutely void, though the administration might have been conducted there for years, and the most important rights vested under it. It is gratifying that our duty does not require us to give our sanction to such a proposition. We think, on the contrary, that the Probate Court of Copiah county became invested with jurisdiction over the administration of the estate of Learned, by virtue of the operation of the act of the legislature, and that its power was not impaired by the omission of a literal compliance with the directions of the statutes in reference to the transmission of the record.

2. The second ground of objection to the jurisdiction of the court to make the order of sale is this: that the petition of Harris, filed April 19, 1841, praying an order for the sale of the real estate of Learned, was finally dismissed as to the lands in Copiah county, at June Term, 1841, and that the subsequent proceedings had on said petition, by citation, returnable to August Term, 1843, and the decree then made for the sale of the land, were and are for that reason, *coram non judice*, and void.

This point, though much pressed in the argument here, is not shown by the record to have been raised in the court below. Moreover, it appears to be based upon an erroneous view of the facts of the case. Taking the whole record together, the history of the proceeding seems to be this: On the 19th of April, 1841, Harris, as administrator *de bonis non* of Learned, filed his petition, representing that the personal estate of Learned was insufficient to pay the debts, and praying an order for the sale of the real estate of said deceased. On this petition an order was made, that citation issue to all persons interested, to appear at June Term, 1841, and show cause against an order for

the sale of sections 6 and 9, and part of 17, township 10, range 7, east, in Copiah county; and also a town lot in the city of Jackson. None of the land in controversy was embraced in this order.

At June Term, 1841, an order was made, reciting that on the 19th of April, 1841, Harris had filed his application for an order to sell the said sections 6 and 9, and part of 17, in Copiah county, and the lot in Jackson; that citation had been ordered; and that one proof of citation had been made; and that thereupon William Barnes, administrator of N. Reynolds, had filed objections to the granting of the order of sale of the lands above described, lying in Copiah county, which objections were considered valid and sufficient, and the said application, so far as related to the land lying in Copiah county, was dismissed, and an order was made for the sale of the lot in Jackson.

It thus appears that the application was narrowed down by the order for citation so as not to include any of the land now in dispute, and so as to apply to a very small portion of the the land owned by Learned in Copiah county; and its dismissal was therefore no adjudication at all in regard to the propriety of a sale of this land, and forms no obstacle to a subsequent application to the court in regard to it. The original petition itself was not wholly dismissed, but it was retained as the report by the administrator, of the insufficiency of the personal estate to pay the debts, and as the foundation of the order for the sale of the lot in Jackson. In decreeing the sale of that lot, upon the petition then filed, the court necessarily adjudged that the report was true, and that the personal estate was in fact insufficient to pay the debts. The application was dismissed only so far as regarded the prayer for the sale of the particular property in Copiah county named in the citation, and remained in court for all other purposes.

The subsequent proceedings instituted at June Term, 1843, and consummated by the final decree at August Term following, do not expressly refer to, or connect themselves with the former proceedings in 1841. They contain no allusion to the original petition, and do not profess to be based upon it; but,

on the contrary, purport to be distinct, and independent of it.

It is unnecessary to anticipate the question whether, after the dismissal of the first application, as to the land embraced in it, the same land would have been subjected to a decree of sale on the subsequent application. The objections made by the administrator of Reynolds may have been conclusive, or otherwise, in their character. What they were does not appear. They may have been rather in abatement, than in bar; and, if the latter, it might be doubtful whether any persons but the representatives of Reynolds could plead the dismissal as final. We express no opinion on those points, nor on the question whether the dismissal of one application for the sale of real estate for the payment of debts, will, under all circumstances, bar a second application for the same purpose.

The view we have taken disposes of the objection raised in the argument on the ground of *res adjudicata*, and shows that the doctrine of the conclusiveness of the decrees of the Probate Court, and of the want of power to set them aside after the Term, is not involved in this case. But the question remains whether the order of sale was based upon proceedings sufficient to give the court jurisdiction to pronounce it.

All that appears is the order made at June Term, 1843, directing the issuance of citation, and the decree made at August Term, 1843, ordering the sale. These are remarkably full, complete, and technical. There was, however, no written petition or application filed, nor was there any report, under oath, of the debts and assets, showing the necessity for such sale. Both these points appear to be fully covered by the decision in *Eldridge* v. *McMakin*, 37 Miss. 72. No petition in writing was required by the statute under which this order was made (Hutch. Code, 666, § 98); and though an account of the personal estate and debts is required to be made and exhibited on oath, it is decided, in the case just quoted, that its omission does not affect the jurisdiction of the court, so as to make void a decree of sale pronounced without such account having been exhibited. But, in the present case, the former report of this

administrator, presented at April Term, 1841, representing the insufficiency of the personal estate, and the judgment of the court then given in affirmation of its truth, were of record, and rendered any further representation by the administrator on that subject altogether superfluous and unnecessary. Indeed it now appears, though the Probate Court was probably not aware of it at the time, that as far back as 1839, the estate had been regularly reported and declared to be insolvent, during the administratorship of Mrs. Learned.

3. But if the court had jurisdiction to make the order of sale, it is insisted that the proceedings under it are inoperative to divest the title of the plaintiffs, because the sale was not reported to, and confirmed by the court.

The sale was made on the thirteenth day of May, 1844, and no report was made until the seventeenth day of November, 1847. At the latter date a formal report, not however under oath, was made out, and filed with the clerk of the Probate Court of Copiah county, the court not being in session, and no action appears ever to have been taken upon it.

The statute under which the sale was made (Hutch. Code, 667), provides that "the executor or administrator making such sale shall make report in writing of all the proceedings therein to the next Orphan's Court after such sale;" but there is no express requirement that the court shall confirm the report. The question as to the necessity of such confirmation has, however, frequently been before this court, and we regard it as settled that a sale of land, under a decree of the Probate Court, is not operative to pass the title to the purchaser, until the sale has been reported and confirmed.

In the case of *Smith* v. *Denson*, 3 S. & M. 326, the appellant filed his petition in the Probate Court in 1842, to set aside a purchase of land made by him at administrator's sale in 1838, alleging various irregularities in the proceeding, and stating that no report of the sale had been made. This court, in deciding the case, uses the following language : "If, then, the court (Probate) has power to set aside the sale, the proper time to do so is when the administrator makes his report. Until

15

then the proceeding is not final; there is no judgment ratifying or approving the sale. If the administrator fails to make his report, the court may compel him to do so." This language was employed in a case where four years had elapsed after the sale, and no report had been made, and therefore recognizes the position that the failure of the administrator to report the sale to the next court will not, of itself, render the sale void. The court may compel a report at a subsequent time, and the proceeding is not final until there is a judgment of the court ratifying or approving the sale.

The case of *Hoel* v. *Coursey*, 26 Miss. 511, involved the validity of a sale made by a guardian, under a statute containing the same provision in respect to the report. Hutch. C. 506, section 132. The sale was made on the 4th of April, 1835, and reported to the court on the 22d June, 1835, and confirmed in October, 1841. The court say: "But there is a still more fatal objection to the sale. No report of it appears to have been confirmed by the Probate Court until October, 1841, more than six years after the sale had been made, and nearly a year after the death of the guardian." The court go on to argue that, if the report had been made to the proper Term, it might have been then confirmed, without other notice; "but it could not be held to be notice for any other Term, unless the record showed a continuance of the application; and hence the order made in October, 1841, without notice to the ward, must be treated, to say the least, as voidable, if not absolutely void." It was actually treated as void, for the court held that the interest of the ward did not pass by the sale so confirmed.

The case of *Bland* v. *Muncaster*, 24 Miss. 62, is a strong authority as to the effect of a confirmation to cure irregularities in the proceedings. The law required sales to be advertised at least thirty days, and the record showed that the order of sale was made on the 25th of February, and that the sale took place on the 20th of March, just twenty-three days after the date of the order. Yet the court said: "The order of the Probate Court confirming the sale, must be treated as final and conclusive,

until reversed, unless the same be vacated for fraud or other matter which would render it void."

In *Monk* v. *Horne*, 38 Miss. 100, the court evidently treat the question as settled. The plaintiff in error attempted to object to the admissibility of proof of an administrator's sale, on the ground that it had not been confirmed. The court assume that the objection was valid, but say that it "cannot avail the plaintiff under the state of case presented by the record. In the first place, no objection was made to the admission of the evidence of the defendant on that ground. He is not to be permitted to allege here another objection against the competency of the evidence: for if this had been made in the court below, it might have been obviated by sufficient evidence."

In the case of *Smith* v. *Chaplain*, M. S. October Term, 1861, it is said: "Two points under the decision of this court, are clearly made out in this record against the title of appellant. 1. There was no order of confirmation of the sale by the administrator at the return Term, or next Term of the court; and no order for continuance or extension of time for report: and no report made and confirmed until after this suit was commenced." The second point related to the appointment of a guardian *ad litem;* and the court held that, for these reasons, the sale was void, and the title of the purchaser invalid.

In view of these decisions, which all concur upon the point that a confirmation is necessary to give any effect and operation to a sale made under a decree of the Probate Court, it is impossible for us to regard it as an open question.

The same rule prevails in the courts of chancery in England and in this country; and there is too close an analogy between the proceedings and practice in the chancery courts and in the probate courts, to justify the establishment, by judicial decision, of different rules in these courts, in relation to the particular subject under discussion. Sir Edward Sugden, in his valuable work on the Law of Vendors and Purchasers, vol. i., page 66, says: "In sales by auction or private agreement, the contract is complete when the agreement is signed; but a different rule prevails in sales before a master; the purchaser is not consid-

ered as entitled to the benefit of his contract till the master's report of the purchaser's bidding is absolutely confirmed." He shows also that under the English practice, it is the duty of the purchaser to procure the master's report, and to obtain the confirmation of it, at his own expense, though, in case of his failure, the vendor may do it. And the author states some important consequences flowing from the principle that the bidder is not considered as the purchaser until the report is confirmed, to wit: that he is not liable to any loss by fire or otherwise which may happen to the estate in the interim; nor is he, until confirmation, compellable to complete his purchase—conclusions that would appear to be equally applicable to sales under a decree of the Probate Court.

Chancellor Buckner says: " By the English practice the whole proceeding is considered *in fieri* until the report is confirmed, the purchase-money paid, and the conveyances executed and delivered." And he remarks: " The true theory of sales of this character is, that the court is itself the vendor, and the commissioner or master its mere agent for executing its will. The whole proceeding, from its incipient stage up to the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision and control of the court." *Robertson* v. *Hann,* Freeman's Ch. R. 265; *Tooley* v. *Kane,* S. & M. Chan. R. 518. And the general rule that the sale must be confirmed is recognized in the cases of *Conger* v. *Robertson,* 4 S. & M. 210; *Tooley* v. *Gridley,* 3 S. & M. 493; and *Sanders* v. *McDowell,* 7 S. & M. 206. Indeed, the rule is general, that wherever exceptions will lie to a master's report, it must be regularly confirmed before any order can be made upon it. *Scott* v. *Livesey,* 2 Sim. & Stu. 300 (1 Cond. Eng. Ch. R. 301).

Giving to these considerations ·their proper influence in their application to proceedings in the probate courts, we can have no difficulty in maintaining the conclusion to which the court has so often reached, that a sale of real estate, under a decree of that court, like a sale under a decree of a court of chancery, does not operate to divest the title of the heirs or devisees, until reported

and confirmed by the court; and that, unless reported to the first Term after the sale, no valid confirmation can be decreed without previous notice to the parties whose interests are to be affected by the sale.

It is insisted that, in this case, inasmuch as there is proof that the sale was lawfully advertised and conducted in a proper manner, and as nearly eleven years had elapsed from the filing of the report, before the commencement of this suit, the court ought to presume a confirmation of the sale. We attach but little importance to the testimony of the two purchasers of the land, as to the regularity and fairness of the sale, nor can we undertake to say, from the evidence before us, whether the sale ought to have been confirmed. It appears that upwards of 3,550 acres of land, now represented to be very valuable, were sold for the price of $780, not quite twenty-two cents an acre. The heirs were all infants, and no guardian *ad litem* was appointed to protect their interests. If the order of sale had been made three years later, this omission would alone, by force of the act of 1846, have made it void. As it was, the order was voidable. The record and papers in relation to the administration have none of them been lost or destroyed. No order of confirmation is found. No notice of any application for such order appears to have been given to the heirs, and the facts are all of too recent a date to justify the court in supplying the absent testimony by presumption. It may be even doubtful whether the doctrine of presumptions is at all applicable to the case. Professor Greenleaf says: " It does not extend to records and public documents, which are supposed always to remain in the custody of the officers charged with their preservation, and which, therefore, must be proved, or their loss accounted for, and supplied by secondary evidence." 1 Greenl. Ev. section 20, page 81. And, it is said, " in like manner it is only where a chasm appears in a public registry, or in the rolls of a court of record, or where the books of registration or the court rolls have been destroyed, that other evidence is admitted of that which the registry or rolls, had they remained entire or in existence, would themselves have shown." Matthews on Presumptions,

209. Lord Mansfield's general remark, "I do not know an instance in which proof may not be supplied," (Cowper, 102), is supposed to be true only when confined to grants from the crown, and other instruments, if any, creating original rights, which, to be effective, should appear on record. Matthews, 202.

It is insisted by the counsel for the defendant, that the evidence given on his behalf was admissible, whether the sale was valid or not, to enable him to set up the defence of the statute of limitations, founded on the fifth section of the act of 1844. Hutch. Code, 830. The record does not show that this point was raised in the court below, or that the defendant sought to avail himself of any such defence. To have reserved the advantage of this point, the defendant ought to have asked an appropriate instruction, or in some other proper form put in the record the evidence that he relied upon it. So far as we can see, the case was rested entirely upon the questions as to the validity of the sale, which were decided in favor of the defendant; and thereby any resort to the statute of limitations was made unnecessary. In the construction and application of the act several important questions may arise which we will not now anticipate. Whether any "sale" has in fact been made, in the absence of confirmation; whether it was made fairly and *bonâ fide;* whether proof of an adverse possession for the time limited by the statute must not be shown, and whether the statute will begin to run until the disability of all the plaintiffs is removed, are some of these, and we do not mean at present to intimate any opinion upon them.

As the case stood before the court below, we think the evidence on the part of the defendant was insufficient to show a divestiture of the title of the plaintiffs, and that the court erred in overruling the motion for its exclusion from the jury, and that for this error the judgment ought to be reversed, and a new trial ordered.