## W. D. Johnson *v.* J. A. Cooper et al.

1. Homestead Exemption. *Act of 1852, and prior law. Testacy and intestacy.*
   Prior to the act of October 20, 1852, the homestead exemption ceased at the death of the owner thereof, and the land became assets of the decedent's estate, and liable for the payment of his debts. By that act, such exemption was continued to the widow and children of the "husband dying intestate," but no provision was made for cases of testacy.

2. Same. *Sale to pay testator's debts. Hutchinson's Code.*
   Under Hutchinson's Code, it was competent for the Probate Court, upon a proper showing therefor, to order the sale of the land which had been used by a testator, and was being used by his family, as a homestead, to pay his debts, in preference to slaves and other personal property.

3. Guardian ad Litem. *Appointment before citation to minors. Order for sale of land.*
   An order of the Probate Court, made in 1856, for the sale of land to pay a testator's debts, was not void because a guardian *ad litem* was appointed to answer for the infant devisees, who had no general guardian, before they were served with a citation. Until the act of March 5, 1846, no statute of this State required the appointment of a guardian *ad litem* in any case in the Probate Court. That statute specified the circumstances in which such guardian should be appointed, and did not include the case of a minor who had no general guardian; and although it would seem that in such case, if in any, a guardian *ad litem* should have been appointed, still, the court cannot extend the statute beyond its plain terms.

4. PROBATE COURT. *Practice. Chancery. Guardian ad litem.*

The practice in the Probate Court was instituted and regulated by statute, and it was not necessary to appoint a guardian *ad litem* in any case in that court because the statutes, or the practice of the Chancery Court, required the appointment of such guardian, in similar cases, in the latter court.

5. SAME. *Practice. Appointment of guardian ad litem. Chancery practice.*

If the practice in chancery had been applicable in probate proceedings, a decree of the Probate Court, in 1856, for the sale of lands, would not be void because rendered upon the answer of a guardian *ad litem* appointed before service of process on the interested minors represented by him. For, by sect. 45, p. 761, of Hutchinson's Code, it was provided that the chancery courts "shall have power to appoint any person they may think fit to be guardian *ad litem* of any infant or insane defendant, whether such infant or insane defendant shall have been served with process or not." And the power of chancery courts to make such appointments could not be taken away by the twenty-second rule of the Superior Court of Chancery, which declared that "no order appointing a guardian *ad litem* to defend infants will be made until after the return-day of process executed." In *Stanton* v. *Pollard,* 24 Miss. 154, the statute above referred to was overlooked.

6. SAME. *Sale of land. Time of report and confirmation.*

It was not necessary to the validity of a sale of land under an order of the Probate Court that it should be reported to, and confirmed at, the first term of the court after it was made, or that notice should be given of the presentation of the report at a subsequent term; and where the report and confirmation were made at such subsequent term, without notice, it cannot be held that the sale was void, and passed no title. The most that could be said against such sale is, that it is still *in fieri,* so far as to entitle parties in interest to move the court to set it aside for reasons which they might have urged at the time it was confirmed. This court does not concur in the *obiter dictum* upon this point in *Learned* v. *Matthews,* 40 Miss. 210.

7. SAME. *Sale of land. Confirmation in pais. Parties.*

A sale of land under an order of the Chancery Court need not be confirmed by the court where the acts of the parties amount to confirmation. And as the requirement of the confirmation of a sale under an order of the Probate Court is borrowed from the chancery rule, it follows that a confirmation *in pais* of such sale was equally as efficacious as a confirmation by that court. Therefore, where executors, under an order of the Probate Court, sold and conveyed certain lands, received the purchase-money, and delivered possession to the purchaser, who has held possession for many years, and made improvements on the land, it must be held that the sale has been confirmed by the acts of the parties. The parties to such sale were the executors and purchaser, — the devisees not being parties thereto, though they were parties to the proceeding which resulted in the order for the sale.

ERROR to the Circuit Court of Holmes County.

Hon. WILLIAM COTHRAN, Judge.

James A. Cooper died in 1856, leaving a last will and testament, which contained, amongst others, the following items: "2. I devise and bequeath to my wife, Mary J. Cooper, all of the property of which I shall die seized and possessed, or be entitled to, to have, hold, and use the same during her life or widowhood, in trust for the support and maintenance of herself and my children; the property not to be liable for her contracts, except the income. 3. If my wife should marry, I wish my property divided equally between her and my children. 4. If my wife shall remain a widow till her death, then I wish all of my property to be divided equally amongst my children."

The executors presented a petition to the Probate Court, stating that the testator owed many debts; that he died seized and possessed of two hundred and forty acres of land, and as the owner of some slaves and other personal property; that the testator made no directions as to what property should be sold to pay his debts, and the executors considered it to be to the interest of the estate to keep the slaves and sell the land; and the prayer was for an order to sell the land to pay the debts. The petition also stated that several children of the testator were minors, having no legal guardian, and asked that a guardian *ad litem* be appointed to answer for them. And at the August term, 1856, the court made an order appointing a guardian *ad litem* for the minors, and in the same order directed the issuance of a citation to them. The citation was executed on the 15th of September, 1856, and, at the term of court held in that month, a decree was rendered, reciting that all the parties in interest had been cited, and that the guardian *ad litem* had answered for the minors, and ordering the sale of the land, as prayed for in the petition of the executors. The land was accordingly sold on the 24th of November, 1856, but the sale was not reported to the next term of the court thereafter, held in December, 1856. It was, however, reported to the January term, 1857, and was then confirmed. The executors conveyed the land to the purchasers at the sale. By sub-

sequent conveyances it was conveyed to W. D. Johnson, who is now in possession thereof; and he and his grantors have been in possession of the same since the sale by the executors.

In 1869, the devisees under Cooper's will instituted an action of ejectment against W. D. Johnson, to recover this land sold by the executors in 1856. The facts above stated were developed on the trial of this action. It was also proven that the testator was living and residing, prior to his death, on the land in controversy. Mary J. Cooper, the wife of the testator, died in 1874.

The court instructed the jury, for the plaintiffs, as follows:

"1. If the jury believe from the evidence that the plaintiffs are the only children and devisees of James A. Cooper, deceased, and that his wife, Mary J. Cooper, is dead, and that said James A. Cooper died in possession of the land named in this action, and that he resided upon the same next before his death, with his family, and that the executors of the will of said Cooper sold the land in 1856, under an order of the Probate Court, and that said plaintiffs were minors, and had no guardian, and that a guardian *ad litem* was appointed, in respect to the sale of said land, before process had been served upon them, and that the land was sold on the 24th of November, 1856, and the sale was not reported to the court till the January term, 1857, and that J. W. Grace was the purchaser at said sale, and he sold to Beall and Johnson, and Beall sold to Johnson, who is the defendant, then they will find for the plaintiffs.

"2. If the jury believe from the evidence that James A. Cooper died on the land sued for, and that it was his homestead, and that he left a widow and minor children, then a sale of said land by his executors conveyed no title to the purchaser, and they will find for the plaintiffs as to the title to said land."

The verdict and judgment were for the plaintiffs, and the defendant sued out a writ of error.

*H. S. Hooker*, for the plaintiff in error.

1. The sale by the executors was not void because the land was the homestead of the testator and his family.  By the act of 1841, exempting one hundred and sixty acres of land to the head of a family, the exemption ceased upon the death of the husband, and the land became assets for the payment of his debts.    12 Smed. & M. 562.    This was the law until the passage of the act of 1852, by which it was provided that such exemption should continue, " upon the death of the husband, dying intestate," to his widow and children.    This latter act only changed the prior law in cases of intestacy.    It had no application where a decedent had made a last will and testament.    2 Geo. 134.    Therefore the case at bar must be settled, upon this point, by the act of 1841.    The intention of the Legislature, as expressed in the act of 1852, to make a distinction between testacy and intestacy is clear, and the act must be construed according to the language used.    As to the rules for construing statutes, see Potter's Dwar. on Stat. 143, and note *b;* 14 N. Y. 244; *New Orleans, Jackson & Great Northern R. Co.* v. *Hemphill*, 6 Geo. 17; *Learned* v. *Corley*, 43 Miss. 687; 3 Geo. 650; 6 How. 116, 582; 7 How. 14; 42 Miss. 52.

2. It was error for the court to instruct the jury that if the sale was confirmed at a term subsequent to the next term after it was made, without notice to the parties interested, it was void: because (1) the plaintiffs failed to make the point when the record of the probate proceedings was introduced in evidence by the defendant; (2) the question of the validity of the sale should have been decided by the court, and not submitted to the jury; and (3) it is not true that the sale is void because the record does not show affirmatively that the confirmation of the sale, subsequent to the next term after it was made, was upon notice to parties interested.    Unless the record tends to show affirmatively the absence of notice to the parties interested, it must be presumed that they were duly served with process before such confirmation, giving them notice

of the report.    After a court has acquired jurisdiction, all of
its orders and decrees are presumed to have been rightly made,
unless the record contradicts such presumption.    *Root* v. *Mc-
Ferrin*, 8 Geo. 48 ; 53 Miss. 73 ; 3 Iowa, 374.

3. The sale was not void because of the appointment of the
guardian *ad litem* before service of process on the minors.
At the time of this sale there was no statute, except the act of
1846, requiring the appointment of a guardian *ad litem* in any
case in the Probate Court.    And the act of 1846 only required
the appointment of a guardian *ad litem* in two cases : first,
where the general guardian of the minor was interested ; and,
second, where the general guardian was not a resident of the
county.    It had been the practice of the Probate Court, in
analogy to the chancery practice, to appoint a guardian *ad
litem* for an infant defendant having no general guardian ; but
it was a matter of practice, and not required by statute.    No
statute required such appointment until the Code of 1857.    The
failure to appoint a guardian *ad litem* in this case, was only an
error to be taken advantage of on appeal, and did not render
the order of sale void, and subject to be collaterally attacked.
6 Smed. & M. 485 ; 9 Smed. & M. 613 ; 2 Cush. 154.

*Jenkins & Little*, for the defendants in error.

1. Under the law existing at the time of the sale of the
land in controversy, the homestead of a person dying intestate
descended to his widow and children.    Acts 1852 (called ses-
sion), p. 66.    Although this act only provided for cases of in-
testacy, it did not take away the right which a man already
had of devising his property as he saw fit.    His power of dis-
position by will continued, and the exemption of the home-
stead continued after his death.    The act of 1852 was only
intended to provide for such cases as were not provided for
by last will and testament.    *Turner* v. *Turner*, 30 Miss. 429 ;
*Nash* v. *Young*, 31 Miss. 134.    Cooper's homestead con-
tinued exempt after his death, for the benefit of his widow and
children, to whom it was devised in trust.

2. The minors interested in the order of sale should have

been brought into court by the service of process upon them, and the guardian *ad litem* have been then appointed to answer for them, before such order was made. The sale of the land in controversy, based upon the probate proceedings in evidence in this case, was void, and conveyed no title. *Prewett* v. *Land,* 36 Miss. 495 ; *Stanton* v. *Pollard,* 24 Miss. 155 ; *Price* v. *Crone,* 44 Miss. 571 ; *McAllister* v. *Moye,* 30 Miss. 258 ; *Ingersoll* v. *Ingersoll,* 42 Miss. 155 ; *Johnson* v. *McCabe,* 42 Miss. 255 ; *Campbell* v. *Brown,* 6 How. 106.

3. The sale was made on the 24th of November, 1856, and was not reported to the next, or December, term of the court, but was reported to the January term, 1857. The parties in interest should have had notice of the motion to confirm, at any term subsequent to the next term after the sale. Because of the failure to give such notice, the purchaser of the land got no title. *Learned* v. *Matthews,* 40 Miss. 210 ; Hutch. Code, 667 ; *Hoel* v. *Coursery,* 26 Miss. 511. Nothing can be presumed in favor of the correctness of the proceedings, or of the validity of the decree of confirmation. The record should show affirmatively that notice of the motion to confirm was given. *Root* v. *McFerrin,* 37 Miss. 17 ; *Smith* v. *Denson,* 2 Smed. & M. 326 ; *Planters' Bank* v. *Johnson,* 7 Smed & M. 449 ; *Gwin* v. *McCarroll,* 1 Smed. & M. 351 ; *Mortiel* v. *Williams,* 42 Miss. 210. The burden of establishing the validity of the sale rests upon the purchaser. *Mundy* v. *Calvert,* 40 Miss. 181.

CAMPBELL, J., delivered the opinion of the court.

The fact that the land, or some part of it, was exempt from execution in the lifetime of the testator did not render the order of the Probate Court to sell it void. Prior to the act of October 20, 1852 (Sess. Acts, p. 66), real estate exempt from execution was not longer exempted after the death of the owner ; but by that act all property exempt from execution, " upon the death of the husband, *dying intestate,*" was made to descend to the widow and children, as therein pro-

vided.  In this case, the husband did not die intestate, and his property was not affected by the act cited.

The widow and children held, not under the law, but under the will, which gave all the property of the testator to his widow in trust, as prescribed by the will; and it was competent for the court, on a showing of the necessity for the sale of the property to pay the debts of the testator, which he had directed them to pay out of his estate, to order a sale of this land, in preference to other property, which would otherwise have been required to be sold for the payment of debts. Hutch. Code, 675, sect. 2, art. 8.

The fact that some of the children of the testator were minors, and that a guardian *ad litem* was appointed for them before service of citation on them, did not render the order for a sale of the land void.  Until the act of March 5, 1846 (Hutch. Code, 728, sect. 4), no statute of this State required the appointment of a guardian *ad litem* in any case in the Probate Courts.  That statute specified under what circumstances the appointment of such guardian should be necessary to the validity of an order or decree of a Probate Court. It did not include the case of a minor who had no guardian; and although it would seem that in such case, if in any, a guardian *ad litem* should have been required, we cannot extend the statute beyond its plain terms, especially in view of the uselessness, practically, of the requirement of guardians *ad litem*.  If it be said that the practice of Chancery Courts made it necessary to have a guardian *ad litem* for an infant defendant, the conclusive answer is, that the statutes instituted and regulated the practice in Probate Courts, and that no statute, prior to that cited, required the appointment of such guardian; and that the statute which thus provided for them for the first time, must be held to have carefully enumerated the instances in which such appointments should be made, and that all others were excluded.  But if the rule in Chancery Courts was applicable in the absence of statutory requirement, the entire failure to appoint a guardian *ad litem*

would not have made the order of sale void. *Smith and Wife* v. *Bradley et al.*, 6 Smed. & M. 485 ; *Learned et al.* v. *Matthews*, 40 Miss. 210. *A fortiori*, would not the premature appointment of such guardian have that effect. It is 'vain to urge the necessity for the appointment of guardians *ad litem* in Probate Courts because they were required by the statute or the practice in Chancery Courts. It is sufficient to reply that the Legislature, in providing for the practice in Probate Courts, did not require a guardian *ad litem*, except as stated in the act of March 5, 1846, cited above. *Burrus* v. *Burrus*, *ante*, p. 92.

In the case at bar, the minors were duly cited, and the immaterial circumstance that the unnecessary act of appointing a guardian *ad litem* for them was done before they were cited, did not affect the order of sale. The statute (Hutch. Code, 761, sect. 45), unrepealed when this proceeding took place, expressly provides that the Chancery Courts " shall have power to appoint any person they think fit, to be guardian *ad litem* to any infant or insane defendant in such suit, whether such infant or insane defendant shall have been served with process or not," etc. It is just to assume that the act of March 5, 1846, requiring guardians *ad litem* in certain cases, was passed with due regard to this act as to suits in equity, and that the legislative understanding was, that in those cases in which it was necessary to have a guardian *ad litem*, he might be appointed before service of process on the infant.

It is true that, by the twenty-second rule of the Superior Court of Chancery, it is declared that " no order appointing a guardian *ad litem* to defend infants *will* be made until after the return-day of process executed," etc. ; but that was a mere announcement that the chancellor *would not* exercise the power of appointment before process executed, which the statute authorized, and did not make void the statute on the subject, which provided that he *could*.

Therefore, if it were true that the Probate Court was bound by the law applicable to Chancery Courts on this subject, it

could not be held that the appointment of a guardian *ad litem* before process executed on the minors made the decree void.

The case of *Stanton* v. *Pollard*, 24 Miss. 154, was an appeal from a decree, and it was reversed because a guardian *ad litem* for the infant heir, who appealed, had been appointed in disregard of the twenty-second rule of the Chancery Court, and has no bearing on this case. In that case, the statute on the subject, above cited, was entirely overlooked. In the case of *McAllister* v. *Moye et al.*, 30 Miss. 258, was committed the error of applying the rule announced in *Stanton* v. *Pollard*, to the Probate Courts, which we have already noticed.

The fact that the sale made on the 24th of November, 1856, was not reported to the court at its next term, in December, but was made and confirmed at the January term, 1857, did not render the sale void. We know no authority for pronouncing it void on that ground. It is true that in *Learned et al.* v. *Matthews*, 40 Miss. 210, there is a *dictum* to the effect that, unless a sale is reported to the first term after the sale, no valid confirmation can be decreed without previous notice to the parties whose interests are to be affected by the sale; but this is plainly *obiter*, and does not command our adherence or concurrence. It was uncalled for, because in that case the sale had never been confirmed by the court. It is unsatisfactory, because, after a valid decree of sale has been made, and power has been thereby conferred on the executor or administrator to sell and convey land of the decedent, it is impossible to conceive that the mere irregularity of the failure of the executor or administrator, after he had legally executed the order by selling, to report the sale to the first term, and then secure its confirmation, could render void the valid order or its execution.

We accept as settled by previous decisions that confirmation of a sale was necessary to its completion where a sale was ordered by a Probate Court, although it may well be doubted whether the requirement of the act of November 26, 1821 (Hutch. Code, 667, art. 101), of a report of a sale, was for any

other purpose than to preserve the history of the administration, and acquaint the court with the facts of the sale, so as to charge the executor, administrator, etc., and whether any formal confirmation of the sale was contemplated.

We do not concur in the view that the confirmation by the court, of a sale reported at a term subsequent to the next term after the sale, without notice, was void, and left the sale unconfirmed and incomplete, so as to leave the title in the devisees or heirs.

Confirmation of a sale, by the court, is but a signification, in some way, of its approval. Until confirmation, the sale is not complete, — *i.e.*, it is *in fieri*, and subject to the control of the court, — but it is not void. It is a sale which has conferred rights on the purchaser, who may apply to the court for its confirmation, and who is entitled to have it confirmed unless valid reasons against it exist. It cannot be said that the sale is void simply because the approval of the court has been expressed at one time rather than another. The most that can be said is that the sale is still *in fieri*, so far as to entitle parties in interest to move the court to set it aside for reasons which they might have urged at the time when it was confirmed. But, aside from this, it is well settled that confirmation of a sale by the Chancery Court is not necessary where the acts of the parties amount to confirmation. "A confirmation by the parties themselves, by their own acts, is as valid as if by the court." *Tooley* v. *Gridley et al.*, 3 Smed. & M. 493 ; *Gowan* v. *Jones*, 10 Smed. & M. 164 ; *Henderson* v. *Herrod et al.*, 23 Miss. 434 ; *Mitchell* v. *Harris*, 43 Miss. 314 ; *Redus et al.* v. *Heyden et al.*, 43 Miss. 614.

The requirement of a confirmation by the Probate Court of a sale ordered by it, and made, in order to complete it, was borrowed from the rule in Chancery Courts ; and, as a confirmation *in pais* of a sale by decree of a Chancery Court was equally efficacious with a decree of confirmation to validate and complete the sale, so it must be held as to sales made by order of a Probate Court.

In this case, there was a valid order of sale, and the sale was made and reported to the court, and was confirmed by the court, one term of the monthly terms of the court having occurred before the report of the sale was made, and no notice of the report having been given; and the purchaser paid the price, and the executors made him a deed conveying the land, and he went into possession, and he, and those holding under him, have held it ever since.

The sale must be held to have been confirmed by the acts of the parties.

The parties to the sale were the executors who made it, and the purchaser. The devisees were parties to the proceeding which resulted in the order to sell, and were so interested in the sale as to be entitled to invoke the power of the court to prevent an unfair sale, to the prejudice of their interest; but it cannot be said with propriety that they were parties to the sale. The order to sell, vested power in the executors to sell and convey the land; and as it was sold, and conveyed, and paid for, and has been held and improved under the title thus obtained, it cannot now be questioned in this collateral manner.

Judgment reversed, and cause remanded for a new trial.