## CHARLES ALLEN *v.* EUGENE MARTIN ET AL.

1. CHANCERY SALE. *Combination among bidders. Confirmation.*
   An agreement of joint owners, who are too poor to buy at a partition sale, that they shall share in the bid of a person who subsequently purchases the land, is not such misconduct as will prevent confirmation.

2. SAME. *Public expectation. Owners' negligence.*
   Public belief that the owners will make the property bring its true value affords no ground for refusing to confirm the commissioner's sale, at which they fail to bid what the land is worth.

3. SAME. *Offer of higher bid. Evidence of value.*
   A medicinal well, though its profits are uncertain, gives to the land a criterion of value, and a bonded offer of a larger bid by a person who excepts to confirmation of the sale establishes that the price was below the standard.

4. SAME. *Inadequacy of price. Fraud.*
   Inadequacy of price is no ground for refusing confirmation unless so gross as to raise a presumption of fraud, and another sale will not be ordered, although the exceptor offers to bid twice as much.

5. SAME. *Re-opening of bidding. Practice.*
   The English practice of re-opening bids on a proposed advance in price, based on the doctrine that the court is vendor, does not prevail in this State, where chancery sales resemble those under execution.

6. SAME. *Purchaser's right. Confirmation by appellate court.*
   The purchaser at the commissioner's sale, rejected by the Chancellor for inadequacy of price, acquired a right to confirmation, which, in the absence of other objections, will be enforced by the appellate court. *Comstock* v. *Purple,* 49 Ill. 158, cited.

7. SAME. *Infant owner. Partial confirmation.*
   An infant co-owner being entitled to protection, the court will reverse the rejection and confirm the sale as to the adults' interest, but on condition that the purchaser shall bid a sum equal to the exceptor's offer, at a sale for partition with the minor. CHALMERS, J., dissented, maintaining that, on all the facts the Chancellor's action should be affirmed.

8. SAME. *Exceptions. Evidence.*
   Exceptions to the report of a commissioner who sells the land are not required to be under oath, and appending the exceptor's affidavit gives them no effect as evidence.

APPEAL from the Chancery Court of Hinds County.

HON. E. G. PEYTON, Chancellor.

On February 28, 1854, a company was chartered with a capital stock of fifty thousand dollars to improve and manage as a place of public resort a medicinal well located on a tract of eight hundred acres of land which the corporators owned in Hinds County, Mississippi. Most of the stock was subsequently purchased by Eugene Martin and others, called the "Cooper's Well Company," who filed a bill against the original shareholders for partition, and on September 14, 1882, the Chancellor decreed a sale for this purpose. After an ineffectual attempt, the sale was made on May 13, 1883, by W. T. Ratliff, commissioner, who reported, on August 27, 1883, that Charles Allen became the purchaser at three thousand eight hundred and forty dollars, which he paid immediately. Eugene Martin and the other complainants objected to a confirmation of the sale for the reasons and on the evidence stated in the opinions. The sale was set aside by a decree which provided for the return to Charles Allen of his money with interest, and compensation for such expenses as he had been compelled to make; and from this he appealed.

*D. Shelton*, for the appellant, argued the case orally.

*Shelton & Shelton*, on the same side.

A sale like this will not be set aside because the price was low without some other special cause. Such was the rule in England after confirmation. Such is the rule in the United States after sale and before confirmation. *Henderson* v. *Herrod*, 23 Miss. 434; *Mitchell* v. *Harris*, 43 Miss. 314; *Redus* v. *Hayden*, 43 Miss 614; *Duncan* v. *Dodd*, 2 Paige 99; *Lefevre* v. *Laraway*, 22 Barb. 167; Dan. Ch. Prac. 1284, note 7; 1 Barb. Ch. Prac. 537 and note 51. The disproportion of the bid to the value of the property was not so great that it became the commissioner's duty to decline to sell. There was competition among the bidders, and the land with the well upon it sold for as much as could be expected in view of the complainants' negligence in absenting themselves. It is doubtless true that the public expected the co-tenants to make the property bring its value. Most owners do this; but a purchaser cannot be

deprived of his rights on such a ground.  The complainants knew the sale day.  It is said that Martin tried to have an agent at the place.  But his effort was not proved.  Exceptions do not substantiate themselves even when sworn to unnecessarily.  No accident caused their absence.  They remained away purposely or from gross negligence.  A combination of capital, such as the " Cooper's Well Company," cannot, without condemning themselves, urge that the poorer owners combined their means in order to make the property sell for as much as they could.  There may be cases in which the court would refuse to confirm a sale in order to protect an infant, but such instances are no departures from the rule.  In this case full protection will be afforded by ordering the purchaser to pay the infant the double bid.

*M. Dabney*, on the same side, argued orally and in writing.

The infant is not objecting to the sale.  No one objects but the complainants.  In the partition the other co-tenants, though in the minority, have rights.  If the infant must be protected, let the sale be confirmed, except as to him, and a re-sale ordered of the entire tract, the proceeds to be divided between him and Allen according to their interests.  No reason is shown to set this sale aside, and it would be wrong to affirm the decree.  Sales by commissioners under chancery decrees should be regulated very much by the same rules which apply to execution sales at law by sheriffs.  The object in each instance is the same, namely, the execution of the judgment or decree of the court, and the interests of suitors as well as public policy demand that the sales should be in each instance alike certain and obligatory, and that the title which a purchaser obtains in either mode should possess a similar degree of force and validity.  The Chancellor should exercise not an arbitrary but a sound discretion.  *Henderson* v. *Herrod,* 23 Miss. 434.  The English practice of re-opening the bidding upon evidence that the sale would bring more has never prevailed in this country.  Dan. Ch. Prac. 1285, note 7 ; *Mitchell* v. *Harris,* 43 Miss. 314.  Confirmation is a matter of right at the instance of the purchaser, unless good cause be shown against it, such as accident, mistake, surprise, or fraud.  *Redus* v. *Hayden,* 43 Miss. 614.  Inadequacy of price

is no ground for refusing to confirm a sale. *Swofford* v. *Garmon*, 51 Miss. 348; *Eberhart* v. *Gilchrist*, 3 Stock. (N. J.) Eq. 167; Dan. Ch. Prac. 1292, notes.

*A. B. Pittman*, for the appellees, argued orally, and filed a brief.

1. The grounds of exception are stated separately and enumerated for convenience, but they cannot be treated as presenting as many · distinct reasons for refusing confirmation. An examination of them will show that they are intended to present the fact that the property brought a grossly inadequate price, and to set forth some of the causes and evidence. It is illogical to consider whether inadequacy alone will justify a re-sale, and then pass successively to the consideration of each of the concurring causes. If these causes had failed to produce injury, and the property had brought a reasonable price, all of them combined would have been ineffectual to prevent confirmation.· Appellant's counsel seize on *dicta* in our reports to the effect that inadequacy of price will not warrant setting aside a sale, and found their arguments on them. Examination of the cases in this State will show that no sale for an insufficient price has been allowed to stand. Elsewhere the sale is always set aside when a better price is offered. Of this the so-called purchaser has no right to complain, because he should have known that his bid was made subject to the condition of its acceptance or rejection by the court. *Scott* v. *Nesbit*, 3 Bro. Ch. 475; *Williamson* v. *Dale*, 3 John. Ch. 290; *Lansing* v. *McPherson*, 3 John. Ch. 424; *Ex parte Bost*, 3 Jones (N. C.) Eq. 482; *Seaman* v. *Riggins*, 1 H. W. Green 214; *Young* v. *Teague*, 1 Bailey Eq. 13.

2. Confirmation is final consent; and the court, being the vendor, may consent or not, at its discretion, but cannot change the terms of sale and then confirm. Such act would have no validity. Rorer on Judicial Sales, § 126. The matter of confirmation rests so peculiarly upon the wise discretion of the court, in view of all the surrounding facts and circumstances, to be exercised in the interest of fairness, prudence, and the rights of all concerned, that it is difficult to come to any absolute legal rule on the subject.

Rorer on Judicial Sales, § 128. After an extensive examination I have yet to find a case where a Chancellor has been compelled by the appellate court to confirm a sale made by him which he considered inadequate. The expressions of our judges about requiring " other circumstances " than mere inadequacy find warrant in the sayings of other eminent judges and writers. But if we look to the cases cited in support we find always that the sale was nevertheless set aside—or that it had already been confirmed. *Andrews* v. *Scotton,* 2 Bland Ch. 629 and notes; *Goode* v. *Crow,* 51 Mo. 212 ; *Williamson* v. *Dale,* 3 John. Ch. 290 ; Story Eq. Jur., § 78 *et seq.* It is probable that the doctrine found a foothold in the early cases in this country repudiating the English custom of " opening bids." Lord Eldon condemned that practice in *Williams* v. *Attenborough,* 1 Turn. & R. 70, and it has been entirely abrogated by Stat. 30 and 31 Vict. ch. 48, § 7. But there is a wide difference between the practice of opening bids merely on a larger offer by some one, and the exercise of a sound judicial discretion in refusing confirmation of a sale sacrificing an estate.

3. This is, moreover, a partition, and the owners' rights must be protected. It is the right of the court in partition to open the biddings—to order a new exposure of the property to auction. This is no wrong to the person who bid most at the former auction. His bid, though the highest, was but an offer to purchase, subject to the approval or disapproval of the court, and, in approving sales made in partition, it is the duty of the court to regard, primarily, the interests of the heirs. *Hays's Appeal,* 51 Penn. St. 58. In the case of *Learned* v. *Matthews,* 40 Miss. 210, Chancellor Buckner is quoted and confirmed in this, that the true theory of sales of that character is, that the court is itself the vendor, and the commissioner its mere agent.

4. A minor's interests are also here involved. In the case of *Lefevre* v. *Laraway,* 22 Barb. 167, the court set aside a sale in the interest of infants. An adult, who was also interested in the land, joined in the application and offered an advance of two thousand dollars. After discussing the right of the adult on this offer, the court said that although no appeal was made in their behalf, yet

such an order could be made on the court's own motion, in its capacity of universal guardian of all infants and by virtue of its obligation to exercise a general superintendence and protective jurisdiction over their persons and property. Story Eq. Jur., §§ 1334–1337. A decree confirming the purchase of part would be confirming a contract which was never made. The test of the power of the court to make such an order would be involved in its power to enforce it. It would be no answer to this to say that the purchaser can and may agree, because the purchaser and the court together could not make a new contract of sale. The title of the other owners cannot be divested by a sale concocted between the purchaser and the court.

COOPER, J., delivered the opinion of the court.

The objections interposed to the confirmation of the sale are four: first, because the lands were sold at a grossly inadequate price; second, because an agreement was made between the purchaser and several of the parties in interest in the land, that in the event the property should be bought by the individual who subsequently did buy, these persons should have the option to pay a proportionate part of the amount bid, and upon so doing should retain the same interest in the lands as that which they before had held; third, because by reason of a belief existing in the minds of the public that the exceptors, or some one or more of them, would appear at the sale as bidders and buy in the property at its full value, other persons failed to appear as bidders at the sale; fourth, because the exceptor, Martin, was prevented by important business from returning from New York to attend the sale and employed an agent to attend and bid for the property the sum of twelve thousand dollars, which the agent neglected to do. Another ground of objection, not specifically assigned in the court below, but probably considered *ex mero motu* by the Chancellor, is that one of the co-owners of the property was a minor, whose father, through whom he inherited the land, had died since the rendition of the decree for sale.

We think it may be fairly said that on the whole evidence it is reasonably clear that the value of the property is from two to four

times the price at which it was sold. Its chief value is derived from the existence of a medicinal well, and though for this reason it may be said that the profit to be derived by the owner is of a speculative and uncertain nature, yet a real and approximately definite value is thereby given to the land. The fact, however, that the property is worth at least double the amount for which it was sold is fixed, as to this suit at least, by the offer of the exceptor, Martin, to give for each parcel of the land twice the amount at which it was sold, and by his entering into bond at the requirement of the Chancellor conditioned to appear and bid such sums.

We are unable to see anything in the agreement made between Allen, the purchaser, and Wells and Williamson and Baldwin, the attorneys of some of the co-owners, calculated to cause a sale of the property for a less amount than it would otherwise have brought, or tending in any manner to the injury of the exceptors. It is affirmatively shown that the clients of these attorneys were poor people unable to purchase the property, that none of them were present at the sale, and that their attorneys were not authorized to make any offers for any portion of the property to be sold. It is further shown that after the agreement had been made, these attorneys induced, or tried to induce, other persons to bid upon the lands, and did nothing to prevent a fair sale at full prices. It further appears that at the suggestion of Mr. Baldwin, the sale was postponed until after the hour at which one leaving Vicksburg, where the exceptors live, would reach the ground; that a telegram was sent to Mr. Klein, at Vicksburg, inquiring whether they desired and expected to be represented, and one to Messrs. Calhoon & Green, their attorneys at Jackson, to the same purport. To the one sent to Klein a reply was received that the Vicksburg parties were out of town, and would have no representative on the ground, and Messrs. Calhoon & Green replied that they had no authority to act in the matter. It was only after all this had been done that the property was exposed to sale. There were many persons on the ground, a number of whom were able to have bought all the property, and some of them other than the purchaser made bids for several of the parcels. Mr. Baldwin states that he thinks

there were from five to twenty bids for each parcel offered. We find nothing in the mode of conducting the sale, and nothing which was done by any of the parties or their attorneys, which is calculated to throw the slightest suspicion of unfairness upon it.

The existence of a belief on the part of some of the public that the owners, or some of them, would appear at the sale and buy in the property, unless it should bring a fair price, is entirely too indefinite and unsubstantial. If this should be deemed a sufficient ground for refusing confirmation of a sale for partition, it is difficult to conceive when such sales would be confirmed, save only in those cases in which the owners were unable to protect their property from sacrifice by reason of their poverty. It is a natural presumption that the owners of property sold for partition will protect it as far as is practicable from sacrifice by themselves appearing as bidders at the sale, but if this is ground for objection by the other co-owners to the sale when made, it would follow that no sale could ever be confirmed unless either the property had brought its full or approximate value, or the owners had invited a sacrifice by publicly giving notice that they would not appear as bidders. The fourth exception is wholly unsupported by evidence. Martin, it is true, made oath to the exceptions filed by him, but this he was not required by law to do, and the addition of the oath gives them no force whatever as testimony.

Laying out of consideration for the present the fact that one of the owners was an infant of tender years, we have a sale stripped of all objections save that the property was sold at an inadequate price. Is this sufficient to authorize a re-sale of the property? Though the courts of many of the States have iterated and reiterated the proposition that mere inadequacy of price is not sufficient to justify a refusal of confirmation, an examination of a great number of the cases discloses the fact that where this inadequacy exists to any marked extent, the courts have been swift to seize upon exceedingly attenuated reasons, excuses, or pretexts to refuse confirmation. In England sales made by a commissioner are treated as if made by the court itself. A bidder acquires no right but to have his offer considered by the court, and to accept or refuse the offer

lies wholly within the power and discretion of the Chancellor. A mere offer to advance the bid is sufficient to produce an order for a re-sale. But this rule of the English courts has not been adopted in the States of this Union. With us the sale partakes somewhat of the nature of a sale in chancery under the English practice, and somewhat of that of a sale under execution at law. Until confirmation the sale is *in fieri* and subject to the control of the court, but this control is a judicial, not an arbitrary one, and confirmation must follow unless there exists some reason recognized by law as warranting a refusal to confirm. A bidder at a sale in chancery assumes certain obligations which he must discharge, he submits himself to the jurisdiction of the court, and becomes a party to the cause in which the sale has been decreed, and he may be compelled to stand by the offer he has made. On the other hand, he acquires certain legal rights which are to be as much protected and enforced as are other rights of other persons. He is entitled not only to ask but to have confirmation if there is no reason valid in law for refusal. *Henderson* v. *Herrod,* 23 Miss. 434; *Swofford* v. *Garmon,* 51 Miss. 348; *Johnson* v. *Cooper,* 56 Miss. 608. The proposition, that inadequacy of price alone, where it is not so gross as to raise *per se* a presumption of fraud, will not prevent a confirmation of the sale, seems to be generally, if not universally, announced by the American courts, and such has been declared to be the law in this State. *Henderson* v. *Herrod, ubi supra ; Mitchell* v. *Harris,* 43 Miss. 314; *Redus* v. *Hayden,* 43 Miss. 614; *Swofford* v. *Garmon,* 51 Miss. 348. It is true, as suggested by counsel for the appellees, that in each of these cases confirmation was refused, but it was refused not because the price was inadequate but because of the existence of other facts which warranted a refusal to confirm, and the court in each case emphatically declared that inadequacy of price alone would not be sufficient to justify a refusal of confirmation.

It is too late for us to consider whether the English rule as to opening the bids on the offer of an advance in price is not the fairest and most equitable; with one voice the American courts have repudiated it, but with a strange inconsistency have evaded rather than enforced

the one declared by them to exist in its stead. We think the rule that inadequacy of price alone will not be sufficient to cause a rejection of the sale ought either to be enforced or repudiated. It ought not to stand as an invitation to confidence, and its effect escaped by finding on insufficient evidence the existence of other circumstances, which when found will justify a refusal to confirm. There is this marked difference between the English and the American rule that while under the one the rights of the owner, under the other those of the purchaser, are considered of paramount importance. If it may be doubted which of the two rules is the better, it is certain that the poorer one steadily adhered to is better than the better one enforced occasionally or not at all.

We have found only one case in which a sale rejected by the Chancellor has been confirmed by the appellate court, that of *Comstock* v. *Purple*, 49 Ill. 158 ; but because it has not been done is no reason why it shall not be done in a proper case. The inadequacy of price was not sufficiently great to raise a presumption of fraud, and we find nothing in the record warranting a rejection of the sale at the instance of the adult co-owners. It appears, however, that one of the tenants in common is an infant of tender years, and because he is, the court of chancery, which is the universal guardian of all infants, should jealously protect his interest. Because of his want of capacity to protect himself a different and broader protection is afforded to him by the court than is given to those capable of guarding their own interests. As between the adult owners and the purchaser, the rights of the purchaser are superior, as between the purchaser and the infant those of the infant must prevail. Because to confirm the sale would be prejudicial to the infant, the Chancellor rightly refused to confirm it as to his interest in the land. We do not, however, think it proper that the purchaser should be deprived of the whole benefit of his purchase. There is no ground for rejecting the sale as to the adults, and though for the protection of the infant the sale cannot stand as to his interest in the property, it is not necessary that it shall be wholly rejected. The exceptors cannot through the protection afforded to the infant acquire the right to have their interest

in the property resold. It is immaterial to the infant whether he remains tenant in common with those who were his co-owners or becomes tenant in common with the purchaser, and we see no difficulty in fully protecting the infant without wholly rejecting the sale. The bond given by Martin is conditioned that he shall appear at the re-sale ordered and bid for each parcel of the land as offered double the amount at which it was sold to Allen. The infant will be fully protected if the purchaser Allen shall accept a confirmation of the sale as to the interest of the adults in the land, consent to a re-sale of the whole property for partition between himself and the infant, and enter into a bond in the penalty of two thousand dollars, conditioned to appear at the sale to be made and bid for each tract as offered double the amount of his former bid. He will be allowed thirty days from this date in which to elect whether he will accept a partial confirmation on these terms. If he shall elect to have such confirmation, the decree of the Chancellor will be reversed and a proper decree entered here, otherwise the decree will be affirmed.

*Bond given, and decree accordingly.*

CHALMERS, J., delivered the following dissenting opinion.

The property was sold for partition, the object being, of course, that there might be a fair and equitable division of the proceeds among the several owners. It has resulted in the husband of one of the cotenants becoming the sole owner by paying to the others less than one-third of its value. According to the opinion of the majority of the court, there is no remedy for this injustice, and this court is bound to sanction it, though the commissioner who made the sale refused to recommend its confirmation, and every witness who was examined testified that the price was wholly inadequate, only differing as to the extent of the inadequacy, some placing it as great as five times below the actual market value of the estate. The Chancellor having heard the witnesses, ordered a re-sale, at which sale the appellee, Martin, has bound himself to bid at least twice as much as was bid at the former sale. Counsel for the appellees stated in his argument that no case could be found in England or America,

where a Chancellor who had declined to receive a manifestly inadequate bid had by a reversal in an appellate court been compelled to do so; and as broad as the statement is, it is perhaps substantially correct; since our own researches have led us to but one such case, to wit, the case of *Comstock* v. *Purple*, 49 Ill. 158. The books abound with cases where the lower courts have been reversed for failing to set aside such sales; but if the case cited is not the only one where the converse rule has been applied, my colleagues and myself and counsel on both sides alike have failed to discover another.

Every member of the court concurs with the Chancellor in thinking that the property in this case has been sacrificed at less than a third of its value, and therefore we refuse to confirm the sale as made and reported; but the majority of the court resort to the singular and novel course of confirming it as to all the adult exceptants, and setting it aside as to the minor; or, in other words, they practically refuse to accept the bid as made by the bidder, but give him a chance in this court to raise his bid. I assert that no similar decree in an appellate court can anywhere be found. There are numerous instances where, as in the case of *Lefevre* v. *Laraway*, 22 Barb. 167, the courts have declared that the mere fact that there was a minor in the case warranted them in setting aside a sale for inadequacy of price; but nowhere have they held themselves bound to confirm it as to the other parties in interest who were adult. A bid for property exposed to public sale is a single and indivisible thing, to be accepted or rejected as made, and inasmuch as the bidder can only be compelled to comply with his offer as made, so also he cannot demand that it be split up for his benefit. Even though the court were compelled under the circumstances of this case to allow him the benefit of his inadequate bid, if there was no minor (which I deny), the fact that there is a minor, forbidding, as it does, the perpetration of the injustice to that minor, relieves us from the necessity of ratifying it as to the adults. The minority of one of the defendants forbids the sanctioning of the injustice as to him, and no principle of law therefore compels us to confirm it as to the adults. The bidder must stand or fall by his offer as made at

the sale, and this seems to have been conceded in the lower court, since the suggestion to increase the bid as to the minor's interest was heard of first upon the oral argument in this court.